IN THE SUPREME COURT OF TENNESSEE

AT NASHVILLE

FILED

**January 25, 1999**

**Cecil W. Crowson**
**Appellate Court Clerk**

| STATE OF TENNESSEE | ) | FOR PUBLICATION |
| | ) | |
| Appellee | ) | FILED: JANUARY 25, 1999 |
| | ) | |
| v. | ) | MONTGOMERY COUNTY |
| | ) | |
| JABBAUL PETTUS | ) | HON. JOHN H. GASAWAY, Judge |
| | ) | |
| Appellant | ) | NO. 01-S-01-9709-CC-00202 |

For Appellant:

MICHAEL R. JONES
Clarksville, TN

For Appellee:

JOHN KNOX WALKUP
Attorney General and Reporter

MICHAEL E. MOORE
Solicitor General

LISA A. NAYLOR
Assistant Attorney General
Nashville, TN

JOHN WESLEY CARNEY, JR.
District Attorney General

WILLIAM M. CLOUD, JR.
Assistant District Attorney General
Clarksville, TN

OPINION

AFFIRMED                                              BIRCH, J.

Jabbaul Pettus, the appellant, pleaded guilty to the unlawful possession of a Schedule II substance (cocaine) with intent to sell.[1] Omitted from the indictment, however, was any reference to the amount of substance possessed.[2] This omission notwithstanding, the offense was treated as a Class B felony and Pettus acquiesced in an eight-year sentence to community corrections--a term well within the range provided for Class B felonies. While on community corrections for the drug offense, Pettus committed additional offenses which resulted in his guilty plea to attempted aggravated robbery. For this new offense, the trial court imposed a six-year sentence to the Department of Correction. During the same hearing, the trial court revoked the community corrections sentence and replaced it with a ten-year term to the Department of Correction.[3] Based on the provisions of Tenn.

---

[1]Tenn. Code Ann. § 39-17-417(a)(4) (Supp. 1994) states: "It is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell such controlled substance."

[2]Tenn. Code Ann. § 39-17-417(c)(1) Supp. 1994) states in pertinent part: "A violation of [Tenn. Code Ann. § 39-17-417(a)] with respect to: Cocaine is a Class B felony if the amount involved is point five (.5) grams or more of any substance containing cocaine and, in addition thereto, may be fined not more than one hundred thousand dollars ($100,000)."

[3]The court has the authority to impose a longer sentence for violations of community correction sentences pursuant to Tenn. Code Ann. § 40-36-106(e)(4) (Supp. 1994). Section 40-36-106(e)(4) states in pertinent part: "The court shall also possess the power to revoke the sentence imposed . . . and the court may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed, less any time actually served in any community-based alternative to incarceration."

Code Ann. § 40-35-115(b)(6) (Supp. 1994),[4] the trial court ordered the sentences to be consecutively served.

On appeal, Pettus contends that the indictment failed to specify 0.5 grams or more as the amount of substance possessed and that the indictment therefore describes a Class C felony.[5] Thus, he insists that a Class B felony sentence was illegally imposed. He also contends that the imposition of consecutive sentences pursuant to Tenn. Code Ann. § 40-35-115(b)(6) was erroneous. Because we find that by entry of the guilty plea, Pettus waived the right to raise any non-jurisdictional defect in the indictment, we affirm the judgment of the Court of Criminal Appeals approving the Class B sentence. Further, we find that a community corrections sentence is not equivalent to probation, and the trial court consequently erred in imposing consecutive sentences on this basis. However, we affirm the judgment of the Court of Criminal Appeals on the sentencing issue because the record supports the imposition of consecutive sentences under Tenn. Code Ann. § 40-35-115(b)(2)(Supp. 1994).[6]

---

[4]Tenn. Code Ann. § 40-35-115(b)(6) states: "The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that . . . [t]he defendant is sentenced for an offense committed while on probation."

[5]Tenn. Code Ann. § 39-17-417(c)(2)(Supp. 1994) states: "Any other Schedule II controlled substance, including cocaine in an amount of less than point five (.5) grams, is a Class C felony . . . ."

[6]Tenn. Code Ann. § 40-35-115(b)(2) states: "The court may order sentences to run consecutively if the court finds by a preponderance of the evidence that . . . [t]he defendant is an offender whose record of criminal activity is extensive."

I

The indictment against Pettus for possession of cocaine with intent to sell provides:

> that Jabbaul L. Pettus of [Montgomery] County, heretofore, to wit, on or about the 24th day of August, 1994, and prior to the finding of this indictment, . . . unlawfully and knowingly did possess, with intent to sell, a controlled substance, to wit: Cocaine . . . in violation of TCA 39-17-417 and against the peace and dignity of the State of Tennessee.

Interestingly enough, Pettus neither claims that his guilty plea to this indictment was involuntarily entered nor does he seek to set it aside. Essentially, he contends that he did not agree to the lengthier sentence for a Class B felony.

The principle is well-settled in Tennessee jurisprudence that the voluntary entry of an informed and counseled guilty plea constitutes an admission of all facts necessary to convict and waives all non-jurisdictional defects and constitutional irregularities which may have existed prior to the entry of the guilty plea. See Hicks v. State, 945 S.W.2d 706, 709 (Tenn. 1997); State v. Wallen, 863 S.W.2d 34, 38-39 (Tenn. 1993). In our thorough examination of the record, we have been unable to find any jurisdictional irregularity or defect in the proceedings leading to the entry of the guilty plea.

4

The cases of <u>Boykin v. Alabama</u> and <u>State v. Mackey</u> are the landmark constitutional cases for analyses of guilty pleas. <u>Boykin v. Alabama</u>, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed.2d 274 (1969) (federal standard); <u>State v. Mackey</u>, 553 S.W.2d 337 (Tenn. 1977) (state standard). In <u>Boykin</u>, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. <u>Id.</u> at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences*." <u>Id.</u> at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280 (emphasis added).

Likewise, in <u>Mackey</u>, this Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea . . . ." 553 S.W.2d at 340. Based upon the foregoing, we have no hesitation in concluding that Pettus's guilty plea met both the federal and state standards and is, therefore, valid. Thus, the valid plea constitutes an agreement to the lengthier sentence.

The nature of the plea-bargain process in general, and the trial court's order in particular, supports this conclusion. First, it is commonly known that the plea-bargain process involves a certain amount of "give and take" so as to reach a resolution that

5

is acceptable to both the State and the defendant. Often, this process includes exaggeration or understatement of the facts and circumstances of the offense. Specifically, we have upheld plea-bargain agreements and resultant sentences in cases where the defendant has accepted a sentence in a range higher than called for by the indicted offense. See State v. Mahler, 735 S.W.2d 226, 228 (Tenn. 1987); accord Hicks, 945 S.W.2d at 706.

In Hicks, the defendant entered a guilty plea and was convicted of voluntary manslaughter, a Class C felony. Id. at 706. In exchange for the plea, Hicks received a "hybrid" sentence of Range II incarceration (ten years) coupled with Range I release eligibility (thirty percent).[7] Id. Under the law at the time, the punishment for Range I was three to six years and for Range II was six to fifteen years. Id. In a post-conviction petition, Hicks argued that the sentence he received was invalid. Id. However, this Court held that a knowing and voluntary guilty plea waives any irregularity as to offender classification or release eligibility. Id. at 709.

Likewise, in Wallen, the defendant entered guilty pleas but later claimed that his sentence was illegal because one of the convictions used to justify especially aggravated offender status had, in the interim, been reversed. 863 S.W.2d at 36. We stated:

> In this case, the petitioner with full knowledge of his rights, voluntarily took the benefits of the

---

[7]The release eligibility for Range II offenses was normally thirty-five percent.

6

> plea bargain. In accepting those
> benefits . . . he waived any
> irregularity or defect in the
> proceedings including the possibility
> that the prior convictions used to
> enhance his punishment might be set
> aside.

Id. at 38-39.

Similarly, in the case under review, Pettus's plea bargain included the district attorney general's promise to forgo prosecution on several other offenses in exchange for the guilty plea. Additionally, Pettus was well into service of the sentence when he raised this issue.

Based on the foregoing discussion, Pettus, with full knowledge of his rights, voluntarily accepted the plea bargain. By accepting it, he waived his right to contest any non-jurisdictional defect in the sentencing process. Accordingly, this issue is without merit.

## II

The second issue concerns Pettus's contention that the trial court erred by imposing consecutive sentences which is governed by Tenn. Code Ann. § 40-35-115 (1997).[8] Specifically,

---

[8]A trial court may impose consecutive sentencing if it finds by a preponderance of the evidence that one or more of the required statutory criteria exist. Furthermore, the court is required to determine whether consecutive sentencing is (1) reasonably related to the severity of the offenses committed; (2) serves to protect the public from further criminal conduct by the offender; and (3) consistent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995).

Pettus contends that for purposes of consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(6), a community corrections sentence should not be treated as probation. Pettus contends that the imposition of consecutive sentences for attempted aggravated robbery and possession of cocaine, based on the fact that the attempted aggravated robbery was committed while he was on community corrections for the drug offense, was erroneous.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of the reviewing court to conduct a *de novo* review with a presumption that the determinations made by the lower court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d)(1997). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

We begin by recognizing that probation and community corrections sentences are alternatives to incarceration, each of which includes a suspension of incarceration. See Tenn. Code Ann. § 40-35-303(c) (Supp. 1994) (probation); Tenn. Code Ann. § 40-36-106(e)(1) (Supp. 1994) (community corrections). But that similarity alone does not allow courts to treat the alternatives as equivalents, ignoring thereby the natural and ordinary meaning of the language used in the statute. See Carter v. State, 952 S.W.2d 417, 419 (Tenn. 1997); Tuggle v. Allright Parking Sys., Inc., 922 S.W.2d 105, 107 (Tenn. 1996).

8

To determine whether the legislature intended a community corrections sentence to be equivalent to a probation sentence, we must examine the language of the relevant statutes. An elementary principle of statutory construction requires that we ascertain and give effect to the legislature's intent without unduly restricting or expanding a statute's coverage beyond its intended scope. Carter, 952 S.W.2d at 419; Hicks, 945 S.W.2d at 707. Legislative intent and purpose are to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the statute. Hawks v. City of Westmoreland, 960 S.W.2d 10, 16 (Tenn. 1997); Carter, 952 S.W.2d at 419. If the legislative intent is expressed in a manner devoid of contradiction and ambiguity, there is no room for interpretation or construction, and courts are not at liberty to depart from the words of the statute. Hawks, 960 S.W.2d at 16.

A review of the language of the relevant statutes reveals a clear distinction between community corrections and probation. For example, the Sentencing Commission Comments to Tenn. Code Ann. § 40-35-303(a) state that a court may allow "a defendant sentenced to community corrections to be placed on probation, including an offender originally ineligible for probation, after service of one (1) year on community corrections." In the same vein, Tenn. Code Ann. § 40-36-106(f) states, in pertinent part, that a court may permit "an eligible defendant to participate in a community-based alternative to incarceration as a condition of probation." Similarly, Tenn. Code Ann. § 40-36-106(e)(3)(A) states:

9

> The court . . . has the power to
> terminate an offender from the
> [community corrections] program and
> to place the offender on supervised
> or unsupervised probation upon a
> showing that the offender did abide
> by the conditions imposed on the
> original sentence and that the
> offender's placement on probation
> presents no substantial risk to
> public safety . . . .

In reading these provisions together, we find that the legislature did not intend a community corrections sentence and a probation sentence to be equivalents for purposes of consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(6). The legislature makes reference to probation and community corrections as distinct alternatives to incarceration where an offender may initially be eligible for a community corrections sentence but ineligible for probation. The clarity of the statutory language prevents undue expansion of the statute's coverage beyond its intended scope. Carter, 952 S.W.2d at 419; Hicks, 945 S.W.2d at 707.[9]

In the case at hand, we must vacate the consecutive sentence, which was imposed pursuant to Tenn. Code Ann. § 40-35-

---

[9]We note also that Tenn. R. Crim. P. 32(c)(3) provides for mandatory consecutive sentences where a subsequent offense is committed while the defendant is on parole, after the defendant has been released on bail, or after the defendant has escaped. By its act of ratifying and approving this rule, we do not think the legislature has expressed its intent to impose mandatory consecutive sentences whenever a crime is committed after the defendant has somehow received the largess of the law after commission of a prior offense. See Tenn. Code Ann. § 16-3-403 (1994) (stating that court rules "shall not abridge, enlarge or modify any substantive right"). This Court is bound by the language employed by the General Assembly even though, as a practical matter, consecutive sentencing for persons who commit offenses while on community corrections seems just as appropriate as consecutive sentencing for persons who commit offenses while on probation.

115(b)(6), because a community corrections sentence is not equivalent to a probation sentence. However, the record supports the imposition of a consecutive sentence pursuant to Tenn. Code Ann. § 40-35-115(b)(2)(Supp. 1994). Pettus has an extensive criminal record which dates back to 1992. Prior to the drug offense and subsequent attempted aggravated robbery charge, Pettus's criminal activity included two theft convictions, an unlawful weapons conviction, a conviction of contributing to the delinquency of a minor, and a conviction of driving on a revoked or suspended license. Because we find that Pettus's record of criminal activity is extensive, we affirm the imposition of consecutive sentencing based upon Tenn. Code Ann. § 40-35-115(b)(2).

### III

In conclusion, we find that by entry of the guilty plea to the drug offense, Pettus waived the right to contest the defect alleged in the indictment. Accordingly, we approve the sentence imposed by the trial court for the drug offense. We find, also, that the trial court's treatment of community corrections and probation as one and the same for consecutive sentencing purposes was erroneous. The sentence shall, nevertheless, remain consecutive because Pettus's record of criminal activity is extensive.

_____
ADOLPHO A. BIRCH, JR., Justice

CONCUR:
Anderson, C.J.
Drowota, Holder, JJ.

Barker, J., not participating

11