IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 28, 2003 Session

## MacARTHUR ENGLISH v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Hawkins County**
**No. 7914     James E. Beckner, Judge**

**No. E2003-00935-CCA-R3-PC**
**January 13, 2004**

The petitioner appeals the denial of his petition for post-conviction relief from his guilty pleas to two counts of felony reckless endangerment, arguing that the post-conviction court erred in finding he received the effective assistance of counsel and that his guilty pleas were knowingly, voluntarily, and intelligently entered. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Paul G. Whetstone, Mosheim, Tennessee, for the appellant, MacArthur English.

Paul G. Summers, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Victor J. Vaughn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On October 12, 2001, the petitioner, MacArthur English, pled guilty to two counts of felony reckless endangerment, a Class E felony, in exchange for concurrent one-year sentences to be served on supervised probation. The record reflects that on April 29, 2001, the petitioner was involved in an altercation at a convenience store in Hawkins County, during which he waved a pistol in the direction of at least one adult and two small children. At the guilty plea hearing, trial counsel stipulated to the submission of the written offense report in lieu of the State's formal presentation of the evidence. The affidavit of complaint accompanying the petitioner's arrest warrant contains the following recitation of facts by the investigating officer:

Gary Boggs states that on April 29, 2001 at about 5:00 p.m. he was at Lakeview Grocery near Rogersville, in Hawkins County, TN when [the petitioner] came in the store. Mr. Boggs said he asked [the petitioner] if he had been trying to get his (Mr. Bogg[s']) wife to go out with him. Mr. Boggs said that [the petitioner] then pushed and punched him and then a fight ensued. Cathy Lawson, who is a clerk at Lakeview Grocery, said that she was attempting to break up the fight and [the petitioner] grabbed her by the throat and told her to get out of his face. She said that the fight broke up and that both parties went out side [sic] and Gary started to leave and [the petitioner] got in his car. She stated that then [the petitioner] exchanged words with Dennis Boggs, who had pulled into the parking lot. She said that [the petitioner] then reached under the seat of his car and pulled out a silver pistol and started waving it around over the car and yelled at Gary and told him that it wasn't over and that he was dead. She said that [the petitioner] then left the store. Dennis Boggs also gave a statement that he saw [the petitioner] pull the gun from the car and wave it around. I feel there is sufficient probable cause to charge [the petitioner] with Assault and Reckless Endangerment.

Following the preliminary hearing, the petitioner was bound over to the grand jury, which indicted him on two counts of felony reckless endangerment based on his pointing the gun in the direction of the two children. It was to these two offenses that the petitioner pled guilty on October 12, 2001.

On October 19, 2001, approximately one week after entering his guilty pleas, the petitioner filed a motion for withdrawal of guilty plea pursuant to Rule 32(f) of the Tennessee Rules of Criminal Procedure, which the trial court dismissed without a hearing on January 17, 2002. The petitioner then filed a petition for post-conviction relief on October 11, 2002, and an amended petition on February 26, 2003, claiming that his guilty pleas were not knowingly, voluntarily, and intelligently entered and that his trial counsel provided ineffective assistance by, *inter alia*, failing to adequately prepare for trial and inform him of the full consequences of his pleas, including the fact that he would be rendered infamous, lose his right to vote, and no longer be allowed to carry a firearm.

Trial counsel testified at the February 28, 2003, evidentiary hearing that she was licensed to practice law in Tennessee, but was currently teaching ethics and criminal law at Southeastern Career College in Davidson County and pursuing a franchise opportunity in a preschool. As a consequence, she was, at the time of the hearing, "fairly inactive" as a practicing lawyer, working on only two cases which she retained from her former law practice in East Tennessee. Trial counsel testified the petitioner retained her to represent him on the instant case, as well as on some unrelated matters. Trial counsel testified she had gone to trial in only one previous criminal case at the time the

2

petitioner entered his pleas, but it was also apparent from her testimony that she had represented a number of criminal defendants in matters which had been resolved without trials.

Trial counsel testified she investigated the case and regularly met with the petitioner during the course of her representation, acknowledging that she did not file any motions. She said the petitioner was a successful businessman, but unable to read or write, and he "used plain English." Therefore, rather than giving him documents to read, she spent time reading verbatim to him from the relevant documents in the case. Trial counsel said she owned a current copy of Tennessee Code Annotated at the time she represented the petitioner, and recalled having read the statute on reckless endangerment. However, she did not recall having read State v. Ramsey, 903 S.W.2d 709 (Tenn. Crim. App. 1995), a case cited in the annotations for Tennessee Code Annotated section 39-13-103, the reckless endangerment statute, for the proposition that multiple convictions for reckless endangerment are not justified when a defendant's reckless conduct, although victimizing more than one person, is part of one continuous course of conduct.

Trial counsel testified she interviewed the State's witnesses, including some who were not present at the preliminary hearing, visited the convenience store where the incident occurred, but did not take any measurements, and interviewed the witnesses who were prepared to testify on the petitioner's behalf. According to her recollection, her investigation revealed that the incident involved the petitioner being attacked by a "much younger and stronger individual" upon his entry to the convenience store, a physical fight ensuing in which another man and a woman joined in against the petitioner, the petitioner retreating to his car where he had one or two people in the car with him, and one of the men following the petitioner to his car. Trial counsel also believed the petitioner returned to the store after the initial incident, but no criminal charges had resulted from his return trip. She acknowledged the State's version of the incident, supported by three witnesses, included the petitioner's having waved a gun in the direction of an adult and two children under the age of five. She said she had feared the petitioner would be charged with aggravated assault of a minor, and the assistant district attorney general had in fact discussed amending the indictment to include charges of aggravated assault. Trial counsel stated that she was familiar with the defenses of self-defense, justification, and necessity, but did not think the petitioner had any legitimate defense to the charges of reckless endangerment involving the two children. On her advice, the petitioner saw a social worker or psychologist, but she never discussed the option of having him examined by a forensic psychiatrist to determine whether he had had a reasonable fear of imminent danger.

Trial counsel testified she believed the State's witnesses would have been more credible at trial than the petitioner's, and informed the petitioner of that fact after meeting with him and his witnesses on October 1. She explained:

> As I recall, as we prepared for trial in this case, I talked to [the petitioner] about my concerns that there was - - Basically, he had a set of witnesses and the state had a set of witnesses, and they were saying very opposite sets of things but saying them consistently. My

concern, and one that I discussed at length with [the petitioner], was that our set of witnesses would not be as credible as the state's set of witnesses.

Although the petitioner expressed a desire to go to trial, his primary concern, during the "multiple conversations" trial counsel had with him, was to avoid spending any time in jail because he had custody of his young daughter at the time. Trial counsel testified:

> [The petitioner] is a conflicted individual, but from my perspective, that was the concern that I found, or I perceived to be an overriding concern over and above other things. There would be days when I spoke to [the petitioner] when having his say in court was the very most important thing and his strong belief that he would be vindicated. And then on other days when he would say to me it's most important – the most important thing is that I not go to jail.

Trial counsel testified that she entered into plea negotiations with the State, which ultimately resulted in the offer of full probation in exchange for the petitioner's pleading guilty to two counts of felony reckless endangerment. Although she had no specific memory of her conversation with the petitioner about entering into plea negotiations, she said she had never entered into or concluded plea negotiations without the consent of a client and, thus, could not imagine that she had done so in this case. Trial counsel acknowledged her billing statement did not reflect any charges for conversations with the petitioner between October 1 and October 12, the date he entered his guilty pleas. She was certain, however, that she had never gone ten days without talking to the petitioner during the course of her representation and explained that she had had many conversations with the petitioner via cell phone from her car or home, which were not always reflected on the billing statement.

Trial counsel testified she discussed all of the options with the petitioner, including the risks and benefits of proceeding to trial or accepting the plea agreement. She believed that a loss at trial "would almost ensure a jail sentence and [the petitioner] was very concerned." She said she arrived late to court on the morning that the petitioner pled guilty, to find him upset that she had not yet arrived. She sat with the petitioner in the back of the courtroom and went over the plea agreement with him, reading verbatim to him from the negotiated plea agreement and plea of guilty, before the petitioner entered his pleas. The petitioner answered the trial court in the affirmative when asked if he understood what he was doing in pleading guilty and if he was satisfied with her representation. However, after the pleas were entered, the petitioner became upset upon learning some of the consequences of his pleading guilty and expressed a desire to withdraw his guilty pleas. Trial counsel described what occurred:

> A    If I might back up, [the petitioner], during the time period in which I was talking to him about the waiver of rights and negotiated plea agreement, seemed agitated and distracted. And I was concerned

4

that he was not fully understanding or fully focused on the discussion we were having.

Q     Yes, ma'am.

A     I'd had the conversation with him prior to this time but not with the documents in front of me and not doing it in the formal way that I was doing it. And he seemed to lack some understanding and focus on the morning of the plea.

And you asked me earlier if I was late to court and I do recall now that I was late to court, and I think that that was at least a part of the source of his agitation. He was here, his lawyer wasn't, he didn't know where I was and that -- and the day progressed that way.

After he entered his plea he became extremely upset that he had been rendered infamous, had lost his ability to carry a firearm, and had lost his ability -- some other ability, I can't remember. He was upset about a set of things that I had not told him about and that he was not aware of. And he said to me that he, you know, based on that and those very important things, he felt like he would rather just go to trial, he didn't know about those things, and I hadn't told him.

Trial counsel testified she approached the trial judge in chambers and asked that he consider allowing the petitioner to withdraw his pleas so that he could go to trial. She said the trial judge explained to her that his rule was to allow the withdrawal of the plea but revoke the bond of the defendant, which meant that the petitioner would have to go to jail and remain there without bond for five days until his trial date. When she informed the petitioner of the judge's rule, he decided not to withdraw his pleas but was "very upset."

Trial counsel testified that she had "some concerns" about whether the petitioner was under the influence of drugs at the time he entered his pleas. However, the petitioner told the trial court during his colloquy that he was not, and she had "no basis to believe otherwise." Although trial counsel acknowledged the petitioner gave appropriate responses to the trial court, when asked if it was clear to her that his pleas were knowing and voluntary, she responded as follows:

I was concerned, as I stated earlier, that he seemed agitated, unable to focus, and, well, just -- and possibly not fully present for whatever reason. So yes, he answered the questions appropriately, but I had known him for many months at that point, and I was concerned about his faculties in that moment.

5

Trial counsel acknowledged, however, that she did not express any of her concerns to the trial court. She testified she did not discuss with the petitioner the possibility of his being placed on probation following a conviction at trial or his appellate rights, other than his right to file a post-conviction petition after entering his pleas of guilty. She acknowledged she did not go over with the petitioner what was required of him in his probation order.

Tennessee Attorney William Zierer testified he filed a Rule 32(f) motion to withdraw guilty plea on October 19, 2001, at the request of the petitioner. Zierer said the petitioner, who was "quite agitated," contacted him at some point after entering his guilty pleas and told him that he "really didn't understand the consequence of what he did that day, . . . that what he got was different than what he understood it to be." Although the petitioner was not clear about the dates, he gave Zierer the impression that time was of the essence. Therefore, Zierer filed the motion as soon as he possibly could, without examining the court file. Zierer testified he was satisfied from his conversations with the petitioner that he had not understood what he was doing when he pled guilty.

Pearl Levine, the petitioner's probation officer, testified that when she met with the petitioner to go over the rules of probation with him, the petitioner "was shocked at almost every statement." She said she at first believed he was only pretending not to understand, but, as time progressed, she came to believe that he, in fact, "truly didn't know what was going on" when she initially explained the rules to him.

Carolyn Diane English, the petitioner's ex-wife, testified she was married to the petitioner for twenty-five years and maintained a cordial relationship with him. She said she assisted the petitioner in his mulch business by doing his bookkeeping and reading and advising him about documents he received in the course of the business. She acknowledged the petitioner owned and operated a successful business.

The petitioner testified he told trial counsel he wanted to go to trial. He said trial counsel was pleased after interviewing his witnesses and told him she thought they had "a real good case and she thought things would be just fine." He stated that his trial date was October 17, but trial counsel called him sometime around October 6 and told him they would be going to court on October 12. When he arrived to court that day, he was under the impression that he and trial counsel were going to discuss whether to postpone "this 12th date to later on." However, when trial counsel arrived shortly after 9:00 a.m., she sat with him in the back of the courtroom and explained that they were going to take the plea bargain they had talked about and that he would receive a year's probation. The petitioner testified that trial counsel told him to "just say yes, sir, or no, sir, to [the trial court's] questions" and that "when they called us, that's what we did."

The petitioner testified he did not know what a felony was and thought he was pleading guilty to a misdemeanor. He said trial counsel never explained the consequences of his guilty pleas to him, and he answered the trial court's questions appropriately because trial counsel told him to do so. He claimed he did not understand what he was doing and did not realize he could have asked questions of the trial court. He said he told the trial court he had not used any drugs during the previous

6

twenty-four hours, in spite of having been on Methadone at the time he entered his pleas, because he thought the court meant only illegal drugs, not medication. The petitioner acknowledged trial counsel did not tell him to lie to the trial court and testified that he agreed to plead guilty, in spite of having wanted to go to trial, because of his desire to avoid serving any time in jail. He conceded he had previously been charged with assault and appeared in general sessions court before a judge. He said, however, that he did not remember the judge having advised him of his rights in that case.

The post-conviction court filed a detailed and extensive written order on April 14, 2003, denying the petition for post-conviction relief. Among other findings, the court determined that trial counsel was well-prepared for the case, provided "superior representation," and "accomplished an outstanding result" for the petitioner. The court found that any error in the fact that the petitioner pled guilty to two counts of reckless endangerment was harmless because the petitioner received no additional time for the second count, and it could not be used as additional enhancement in any future proceeding against him. The post-conviction court further found that the petitioner's guilty pleas were voluntarily, understandingly, knowingly, and intelligently made. Thereafter, the petitioner filed a timely appeal to this court.

## ANALYSIS

### I. Post-Conviction Standard of Review

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

### II. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel"guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S. Ct. at 2064.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688, 104 S. Ct. at 2065; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

### III. Claims of Ineffective Assistance of Counsel

The petitioner argues trial counsel was deficient for failing to adequately prepare and investigate the case. Specifically, he contends that trial counsel was deficient for failing to file any motions, investigate whether self-defense was a viable defense, or research the statute on reckless endangerment. He additionally argues that trial counsel was deficient for allowing him to enter an illegal plea to two counts of reckless endangerment in spite of having concerns about his mental state at the time he entered the pleas, and for failing to inform him of the full consequences of his guilty pleas. The petitioner asserts that his "desire to go to trial was prejudiced as the direct result of his attorney's failure to effectively represent his interests."

In its order denying post-conviction relief, the post-conviction court found there was a "real danger" that, had the petitioner gone to trial, "he would have been convicted, received a greater sentence and gone to jail." The court found that trial counsel had achieved "an outstanding result for the petitioner" and concluded that counsel's alleged deficiencies in, among other things, failing to investigate the defense of self-defense and necessity or to have the petitioner examined by a forensic psychiatrist did not amount to viable issues in the case. The post-conviction court's order states in pertinent part:

Just because there were some things about straight probation the petitioner did not like is no reason to grant post conviction relief. The

8

petitioner had had prior experience in some criminal charges with the courts. [Trial counsel] had accomplished an outstanding result for the petitioner. One would have to say that such was the result of superior representation.

There was a real danger that had the petitioner gone to trial before a jury that he would have been convicted, received a greater sentence and gone to jail.

It was the petitioner's informed decision to plead guilty. And as he advised the court no force, coercion or promises were made to induce the plea other tha[n] the clearly stated agreement.

In attacking [trial counsel's] representation issues were raised about the warrants in the General Sessions Court, double jeopardy in the multiple counts, consideration of self defense and necessity, validity of the indictment, jury venire, psychiatric evaluation and requests for jury instructions.

None of these issues were viable then nor are they viable now.

If there is any error in the fact that petitioner pleaded guilty to and was sentenced for two counts of reckless endangerment it is harmless error. Petitioner received no additional time for the second count, and since both counts arose out of the same incident, the second count does not qualify for additional enhancement in any future proceeding against petitioner.

There certainly could have been no better result achieved for the petitioner.

This court finds that under the guidelines and requirements of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975) and Strickland v. Washington, 466 U.S. 668 (1984) the petitioner was afforded effective assistance of counsel in all aspects of his representation by [trial counsel].

We conclude that the record supports the post-conviction court's finding that the petitioner received the effective assistance of counsel. Trial counsel's testimony revealed that she met regularly with the petitioner, spoke with him frequently, and kept him informed of the progress in his case, including the plea negotiations on his behalf. Her investigation included interviewing witnesses and visiting the location where the incident took place. Based on her investigation, she believed that the State's witnesses would be more credible than the petitioner's witnesses and

9

informed the petitioner accordingly. Trial counsel testified that the petitioner's primary concern, as expressed to her, was that he not spend any time in jail. She said she discussed the risks and benefits of accepting the plea offer versus proceeding to trial, and the petitioner chose to plead guilty to avoid spending time in jail away from his daughter.

Trial counsel testified she went over the plea bargain, waiver of rights and guilty plea with the petitioner and explained to him the rights he was relinquishing by pleading guilty. Although the petitioner was agitated on the morning he entered his pleas, and she had some concerns he was not focusing properly and might be under the influence of drugs, she had no basis to believe he was lying when he told the trial court he had not consumed any drugs or alcohol during the previous twenty-four hours and attributed a good deal of his agitation to her late arrival to court that morning. Even if the petitioner were distracted and agitated on October 12 when trial counsel explained the plea agreement to him, his own testimony, as well as that of trial counsel, revealed that trial counsel had already discussed the plea agreement with him on a previous date. We cannot, therefore, conclude that trial counsel was deficient for failing to inform the trial court of her vague concerns about the petitioner's mental state, or in allowing him to enter his guilty pleas.

The petitioner also argues that trial counsel was deficient for allowing him to plead guilty to two counts of reckless endangerment arising out of a single course of conduct, in contravention of State v. Ramsey, 903 S.W.2d 709 (Tenn. Crim. App. 1995). In Ramsey, this court reversed two of a defendant's three convictions for reckless endangerment, concluding that because the reckless endangerment statute prohibits a course of conduct as opposed to an individual act or result, the defendant's reckless driving that endangered passengers in two separate vehicles, close in time and distance to each other, constituted a single offense of reckless endangerment. Id. at 712-13. However, we noted that under different circumstances, multiple convictions might be warranted, writing: "We need not fashion a blanket rule that provides that a defendant's continuous operation of a vehicle may *only* result in one act of reckless endangerment under the statute. Many scenarios could be created where such a rule would not be prudent." Id. at 713 (emphasis in original). Accordingly, in State v. Christopher Clay Kennedy, No. 01C01-9601-CC-00038, 1997 WL 137426, at **2-3 (Tenn. Crim. App. Mar. 27, 1997), we upheld separate convictions for reckless endangerment based on a defendant's continuous operation of a vehicle when the proof showed that the second act occurred two blocks from the first, and the defendant "had time between the two acts to get control of his car and to think about what he was doing." Id. at *3.

The indictment in this case charged the defendant with one count of reckless endangerment for pointing a gun in the direction of Nicole Boggs and one count of reckless endangerment for pointing a gun in the direction of Melissa Boggs. The affidavit of the arresting officer, submitted in lieu of the State's formal presentation of proof, contains no mention of the children. Therefore, it is not clear from the record whether the defendant's actions constituted one continuous course of conduct, such as to prohibit multiple convictions for reckless endangerment, or if his pointing the gun at the children occurred at separate times, with a sufficient interval in between to support two separate counts of reckless endangerment.

Regardless of whether the evidence supported multiple convictions, we agree with the post-conviction court that the petitioner is not entitled to post-conviction relief on this claim. Although we disagree that the petitioner's second conviction could not be used for enhancement purposes in any future proceeding, see Tenn. Code Ann. § 40-35-106(b)(4) (stating that convictions for multiple felonies committed as single course of conduct constitute one conviction for purpose of determining prior convictions, but that acts resulting in threatened bodily conduct shall not be construed as a single course of conduct), the trial court correctly observed that the second conviction did not result in any additional time for the petitioner. Moreover, by pleading guilty to the offenses, the petitioner essentially admitted the facts required to support his convictions. See State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) ("The principle is well-settled in Tennessee jurisprudence that the voluntary entry of an informed and counseled guilty plea constitutes an admission of all facts necessary to convict and waives all non-jurisdictional defects and constitutional irregularities which may have existed prior to the entry of the guilty plea."). In Pettus, our supreme court concluded that a defendant who pled guilty to a Class B felony of possession of cocaine with intent to sell waived the right to challenge the conviction and sentence on the basis that the indictment failed to specify the amount of cocaine possessed. Id. In reaching this conclusion, the Pettus court noted the "give and take" process involved in plea bargain negotiations:

> The nature of the plea-bargain process in general, and the trial court's order in particular, supports this conclusion. First, it is commonly known that the plea-bargain process involves a certain amount of "give and take" so as to reach a resolution that is acceptable to both the State and the defendant. *Often, this process includes exaggeration or understatement of the facts and circumstances of the offense.*

Id. at 543 (emphasis added).

Thus, we conclude that the petitioner has not met his burden of showing by clear and convincing evidence either that his trial counsel was deficient for allowing him to plead guilty to two counts of reckless endangerment, or that he would not have pled guilty but instead would have proceeded to trial had counsel informed him that he could not be convicted of two counts of reckless endangerment based on a single course of conduct. The petitioner, therefore, is not entitled to post-conviction relief on the basis of ineffective assistance of counsel.

### IV. Voluntariness of Guilty Pleas

The petitioner also contends his guilty pleas were not knowingly, voluntarily, or intelligently entered. In support, he points to the fact that he is illiterate, able to understand only "plain English," and appeared to trial counsel to lack understanding and focus on the morning he entered his pleas. The petitioner concedes the transcript of the guilty plea hearing presents the "illusion of a voluntary and intelligent plea" but asserts that he was only following trial counsel's advice without understanding what he was doing. He further asserts that the only reason he allowed his guilty pleas

11

to stand "was his fear of his bond being revoked, and of the negative consequences that would result for his four-year-old daughter."

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). Pettus, 986 S.W.2d at 542. In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, the Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The record in this case shows that the post-conviction court considered the appropriate factors in determining whether the petitioner's pleas were knowing, intelligent, and voluntary. With respect to this claim, the post-conviction court's order states in pertinent part:

> The petitioner does not read and write although he is a successful business man. [Trial counsel] read him verbatim all documents pertaining to the case and explained them in detail.
>
> At the evidentiary hearing it has been suggested that the petitioner doesn't understand things well and didn't understand the plea, the allocution and the consequences of his plea.
>
> However, in his direct examination of the petitioner, post conviction counsel used more complicated and technical language than used by the court at the taking of the guilty plea. The petitioner understood all of his examination and the cross-examination without any difficulty.

The petitioner clearly understood all the questions and statements by the court when he entered his plea. The transcript of the allocution consisting of ten (10) pages demonstrates the understanding of the petitioner beyond question.

In this transcript the petitioner assures the court that he understands all aspects of the plea and that he is completely satisfied with his representation by [trial counsel].

The post-conviction court further found that the petitioner had prior experiences with the criminal court, that there was a "real danger" the petitioner would have been convicted and received a harsher sentence had he gone to trial, and that it was his informed decision to plead guilty.

The record supports the post-conviction court's findings and conclusions with respect to this claim. As the post-conviction court noted, the petitioner informed the trial court at the guilty plea hearing that he had not been coerced or promised anything in exchange for his pleas, was not under the influence of drugs or alcohol, was satisfied with counsel's representation, understood the charges to which he was pleading, and wished to plead guilty. The fact that the petitioner may not have known or been informed of the full conditions of his probation does not render his guilty pleas unknowing and involuntary. In a recently released case, our supreme court held that a defendant need not be informed of all the criteria affecting his release on parole in order for his guilty plea to have been knowingly, voluntarily, and intelligently entered. See Jaco v. State, ___ S.W.3d ___, 2003 WL 2287691, at *1 (Tenn. Dec. 5, 2003). We conclude, likewise, that the petitioner need not have known of the full ramifications of his conviction and sentence, *i.e.*, that he would be rendered infamous, would be unable to vote, and would be prohibited from carrying a weapon, in order to enter knowing, voluntary, and intelligent guilty pleas.

The petitioner explained at the post-conviction hearing why he chose to plead guilty in spite of his desire to go to trial:

A    Well, [trial counsel] had -- She had explained me -- when she said that they [sic] was always a chance in any, no matter how good your case is, they [sic] is a chance that you could go to jail. In my situation, I couldn't -- I couldn't go to jail.

Q    What was your situation?

A    Well, I've got a child. We live -- Just me and her lives [sic] in my house. And, you know, I told [trial counsel], you know, I couldn't go to jail. I didn't have nobody [sic] to watch her.

13

It is clear from the record that the petitioner made a knowing, voluntary, and intelligent choice among the choices available, opting to accept the plea bargain due to his desire to avoid the risk of serving any time in jail. Therefore, he is not entitled to post-conviction relief on this claim.

## CONCLUSION

We conclude the petitioner failed to meet his burden of demonstrating by clear and convincing evidence that he was denied the effective assistance of trial counsel. We further conclude that the petitioner's guilty pleas were knowing and voluntary. Accordingly, we affirm the denial of post-conviction relief.

_____
ALAN E. GLENN, JUDGE