IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 11, 2004

## STATE OF TENNESSEE  v.  FRANKLIN D. BROOKS

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2001-D-2445     Cheryl Blackburn, Judge**

_____

**No. M2003-00896-CCA-R3-CD - Filed September 23, 2004**

_____

Defendant, Franklin D. Brooks, was indicted by the Davidson County Grand Jury for burglary, theft, and vandalism.  Following a jury trial, Defendant was convicted of burglary, a Class D felony. Following a sentencing hearing, Defendant was sentenced as a Range II offender to serve seven years on community corrections.  As a condition of his sentence, Defendant was ordered to complete the Lifelines program while incarcerated.  Defendant appeals his sentence.  We conclude that the trial court erred by sentencing Defendant to serve more than one year of his sentence of split confinement in continuous confinement.  We also conclude that Defendant is entitled to receive credit for time served in confinement.  Accordingly, we remand this case for entry of an Amended Judgment to allow credit for time served in confinement, and we modify the sentence, and order that Defendant be released from custody and placed on community corrections to serve the remainder of his sentence.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Trial Court Reversed, Remanded, and Modified**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID G. HAYES and JOHN EVERETT WILLIAMS, JJ., joined.

Ross E. Alerman, District Public Defender; William J. Steed (on appeal), Assistant Public Defender; and Paul Seusy (at trial), Assistant Public Defender, for the Appellant, Franklin D. Brooks.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the Appellee, the State of Tennessee.

**OPINION**

**Trial**

Michael Keels testified at trial that on September 22, 2001, he was parked at a Burger King drive-thru window when he observed Defendant in the parking lot of the China Bell restaurant, adjacent to the Burger King. Defendant was standing six to eight feet away from Mr. Keels' vehicle. Defendant was wearing a white t-shirt. Mr. Keels testified that he saw Defendant throw a brick through the front window of the restaurant and then go inside. Mr. Keels called the police using a pay phone in the Burger King parking lot. When the police arrived, Mr. Keels gave a statement and left. Mr. Keels was later contacted by the police and asked to return to the restaurant to identify a suspect. When Mr. Keels arrived at the restaurant, he identified Defendant as the person whom he had seen break into the restaurant. Defendant was seated in the backseat of a police car.

On the date of the offense, Joe Rohelier was street-sweeping in the parking lot of the China Bell restaurant. Mr. Rohelier saw a man inside the restaurant, which was closed at that time, and the glass door was broken out. Mr. Rohelier pulled his truck around to the front of the building, and he saw Defendant exit the restaurant. Mr. Rohelier did not notice if Defendant was carrying anything. Mr. Rohlier testified that Defendant was wearing a t-shirt and khaki pants. He did not notice any tattoos on Defendant. He testified that Defendant wore his hair in a ponytail. Mr. Rohlier said to Defendant, "there is no need to run. I know who you are." Defendant went in the direction of the Burger King. Mr. Rohlier called the police using his cell phone. When the police arrived, Mr. Rohlier gave a statement.

Setkeong Yau's family owned the China Bell restaurant. When Mr. Yau arrived at the restaurant after the offense occurred, he observed that the glass door was broken and the bowl on the counter that contained cash tips was empty. Mr. Yau testified that the restaurant had closed at 10:30 p.m. and that Defendant had entered the restaurant earlier that day and asked for free food. Mr. Yau gave Defendant some rice. Defendant returned later that day and asked for more rice, and Mr. Yau refused to give him any. Defendant looked angry. Mr. Yau testified that approximately $24 was taken from the tip jar, but he had not counted the money in the tip jar that night before leaving the restaurant.

The deposition testimony of Officer Michael MacLellan, of the Metro Nashville Police Department, was read into evidence. Officer MacLellan testified that on September 22, 2001, he responded to a burglary in process at the China Bell restaurant. When Officer MacLellan arrived at the restaurant, he saw that the front door was "busted out." A witness to the incident, Michael Keels, gave a description of the person who committed the offense, which matched the description of a homeless man with whom Officer MacLellan had prior "dealings." Officer MacLellan searched the area within walking distance of the restaurant. Police officers discovered Defendant behind the Pizza Hut, which is located approximately 200 yards from the China Bell restaurant. Officer MacLellan transported Defendant to the restaurant and presented him to Mr. Keels to identify. Mr. Keels had left the scene, and another officer transported him from his house back to the scene. When

Mr. Keels arrived, officers directed Defendant to step out of the patrol car, and Mr. Keels identified him as the person he saw break into the restaurant. The time was around midnight. Officer MacLellan testified that there were lights in the parking lot and lights from other area businesses that were open at the time. Officer MacLellan arrested Defendant and performed a search incident to arrest. He discovered $15 in Defendant's pocket, and a large portion of it was in change. Officer MacLellan testified that Defendant was wearing blue jeans and either a white or blue shirt at the time of his arrest.

Defendant testified that he was homeless at the time of his arrest. Defendant admitted that he had several prior misdemeanor and felony convictions, including theft and burglary of a motor vehicle. Defendant testified that he had entered guilty pleas in all of those cases. Defendant testified that on the date of the offense, he had been panhandling in the Burger King parking lot. He had $15 to $17 dollars, mostly in change, on him. Defendant testified that he had asked Mr. Yau for food once that day. Defendant testified that he had been sleeping at the KFC, which is about one-fourth of a mile from where the burglary occurred. Defendant had tattoos covering his forearms. Defendant had been drinking alcohol earlier that day, but he testified that he was not intoxicated when the police picked him up. Defendant was asleep when the police found him. Defendant testified that he had seen Mr. Rohelier on two prior occasions. On one occasion, Defendant handed Mr. Rohelier a set of keys that he had found in the parking lot, and on another occasion, Defendant had thrown a hamburger wrapper on the ground, and he and Mr. Rohelier "had words."

**Sentencing Hearing**

Defendant was 39 years old at the time of sentencing. Defendant testified that he did not remember committing the offense in this case. He testified that he had been homeless for four years prior to his arrest in this case. He testified that he was an alcoholic. Defendant admitted that he had prior convictions and that he had previously violated probation. Defendant had attended Alcoholics Anonymous meetings while he was incarcerated and awaiting trial and sentencing in this case. Defendant testified that he did not have any family support and that he would be willing to abide by the rules of the Neely Halfway House if ordered by the trial court to reside there as a condition of his sentence. Defendant testified as follows:

> Well, I'm sorry for the things that I've done in the past, committing crimes. But the main thing is I need help for the alcoholism. Because if I don't get no help for it, then it's going to continue. You know, I know this. I've done things and not realized that I've even done it. I just need help for the drinking. You know, saying it and meaning it is two different things. I need help for my drinking.

On January 31, 2003, the trial court sentenced Defendant as a Range II multiple offender to seven years to be served on community corrections. As a condition of Defendant's community corrections sentence, the trial court ordered Defendant to remain in custody until he completed the "Lifelines" program. The trial court stated as follows:

I have to look at alternative – he is not presumed eligible for alternative sentences. However, looking at the Sentencing Act and Community Corrections, I'm struck by this: And, that is, do I want to send someone to prison and use up one of those prison beds for someone who is clearly an alcoholic, homeless, and creates general havoc in the area where he is? Is that what I want to spend a prison bed on, or do I want to try to craft something that would be maybe possible to do something about it?

I don't have a whole lot of hope for it, but this is what I'm going to do: That is, Mr. Brooks, I'm going to put you on Community Corrections as of today. But as a condition of that Community Corrections, you're going to have to be in the Lifelines program. *That means you're not going to get out of custody, you're going to be at the Lifelines program. You'll be on Community Corrections as of today, but you'll just not get out of custody.* If you successfully complete that and have no write-ups, then we'll put you out. But I want you first to go to a halfway house when you get out because we're going to try to do everything we can to get you over this problem and give you some skills to deal with it. You can either do that or not. I'll say this much, Mr. Brooks: If you have any write-ups or you drop out of that Lifelines program like you did in the past, that's an automatic violation of your Community Corrections program. They'll notify me, *and then we'll have a hearing to revoke your Community Corrections program even though you didn't get out of custody.* So I guess it's kind of up to you. If you want to get some help, we'll give you some help. And then when you get out, we'll put it back on the docket just as a safety measure, January the 30th of 2004.

(Emphasis added).

**Analysis**

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). The burden is on the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

While determining or reviewing a sentence, the courts must consider:(1) the evidence received at trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence offered by the parties on the enhancement and mitigating factors; (6) any statement the defendant wishes to make in the defendant's behalf about sentencing; and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103(5), -210(b); *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

Defendant was convicted of burglary, a Class D felony, which carries a possible sentence of four to eight years for a Range II multiple offender. *See* Tenn. Code Ann. §§ 39-14-402(c), 40-35-112(b)(4). The trial court found the following enhancement factors applicable to Defendant's sentence: (1) that Defendant has a previous history of criminal convictions in addition to those necessary to establish the appropriate range, Tenn. Code Ann. § 40-35-114(2); and (2) that Defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community, Tenn. Code Ann. § 40-35-114(9). The trial court gave significant weight to Defendant's prior criminal history. The trial court also found mitigating factor (1), that Defendant's conduct neither caused not threatened serious bodily injury, to be applicable. Tenn. Code Ann. § 40-35-113(1). The trial court declined to apply mitigating factor (7), that Defendant was motivated by a desire to provide for necessities for his family or himself, or mitigating factor (8), that Defendant suffered from a mental or physical condition that significantly reduced his culpability. Tenn. Code Ann. § 40-35-113.

The trial court sentenced Defendant to seven years. Defendant does not challenge the length of the sentence imposed. Rather, Defendant argues that the trial court erred by imposing an indefinite period of confinement that is potentially longer than what is permitted under the Sentencing Act. Defendant contends that he effectively received a sentence of split confinement. In sentencing Defendant to serve his sentence on community corrections and, as a condition of his sentence, to complete the Lifelines program while incarcerated, the trial court apparently relied upon Tenn. Code Ann. § 40-35-306(a), which provides that "[a] defendant receiving probation may be required to serve a portion of the sentence in continuous confinement for up to one (1) year in the local jail or workhouse."

Where appropriate, a defendant may be given as much as one year of "shock" confinement as a condition of a community corrections sentence. *See State v. Jimmy D. Johnson*, No. 03C01-9602-CC-00062, 1997 Tenn. Crim. App. LEXIS 1037, (Tenn. Crim. App. at Knoxville, October 16, 1997), *no perm. to app. filed*. However, in such cases, the period of confinement may not exceed one year. *State v. Tim Mattingly*, No. M2002-02765-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 754, (Tenn. Crim. App. at Nashville, September 2, 2003), *no perm. to app. filed*.

At the sentencing hearing, the trial court stated, "So he's not going to meet with the parole board since he's not on a release status. He is not technically incarcerated in that sense. As a condition of his program, I want him to attend the Lifelines program. And when he does that, he's out of custody." Despite the trial court's verbiage that Defendant "is not technically incarcerated," the trial court sentenced Defendant to a term of incarceration. As a condition of Defendant's community corrections sentence, the trial court ordered Defendant to participate in the Lifelines program while in continuous custody. We conclude that the condition imposed is not improper; however, we cannot approve the trial court's theory that Defendant was not incarcerated.

We note that the judgment form shows a sentence of seven years in the Tennessee Department of Correction (TDOC) and also shows a sentence of seven years to community corrections, and as a condition, that Defendant must complete the Lifelines program. A community

corrections sentence is meant to be used instead of a sentence to a state penal institution. *See* Tenn. Code Ann. § 40-36-106(e)(1); *State v. Robert J. Williams*, No. W2002-02366-CCA-R3-CD, 2003 Tenn. Crim. App. LEXIS 366, (Tenn. Crim. App. at Jackson, April 14, 2003), *no perm. to app. filed*. Therefore, the judgment should not reflect a sentence to the TDOC. Moreover, the judgment form does not specify a term of months, not to exceed one year, that Defendant serve in confinement. Accordingly, we remand this case for entry of an Amended Judgment that states that Defendant is sentenced to serve seven years on community corrections following one year of continuous confinement.

Defendant also asserts that he is entitled to receive credit for time served in jail. Under the heading, "special conditions," the judgment form states that "jail credit not apply to split [confinement]." (Emphasis in original). Tennessee Code Annotated section 40-23-101(c) provides,

> The trial court shall, at the time the sentence is imposed and the defendant is committed to jail, . . . render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in . . . county jail . . . pending arraignment and trial. The defendant shall also receive credit on the sentence for the time served in the jail . . . subsequent to any conviction arising out of the original offense for which the defendant was tried.

Tenn. Code Ann. § 40-23-101(c). Furthermore, a defendant is entitled to earn good conduct credit if he receives a sentence of incarceration in the county jail as part of a community corrections sentence. *State v. Derrick L. Dillard*, No. M2002-03089-CCA-R3-CD, 2004 Tenn. Crim. App. LEXIS 36 (Tenn. Crim. App. at Nashville, January 16, 2004), *no perm. to app. filed*.

The judgment in this case was entered on January 31, 2003. Defendant asserts that he has been in continuous custody for almost three years, since his arrest on September 22, 2001. The trial court implied that Defendant was in custody at the time of sentencing. At the hearing, the trial court stated, "That means you're not going to get out of custody, you're going to be at the Lifelines program. You'll be on Community Corrections as of today, but you'll just not get out of custody."

We conclude that the trial court erred in sentencing Defendant to serve a portion of his sentence incarcerated without allowing credit for time served in confinement prior to sentencing. Furthermore, because the actual time served exceeds one year, we modify the judgment of the trial court and order that Defendant be released from custody and placed on community corrections.

**CONCLUSION**

For the reasons stated herein, the judgment of the trial court is reversed, and this case is remanded for entry of an Amended Judgment, reflecting a community corrections sentence of seven years, with one year of incarceration in "shock" confinement, and Defendant shall receive credit for

all time already served in jail.  It appears from the record that Defendant has already served more than the one year in confinement; if this is correct, and there has been no revocation of community corrections, Defendant should be immediately released from custody to serve the balance of his community corrections sentence.

_____
THOMAS T. WOODALL, JUDGE