IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 20, 2005

## STATE OF TENNESSEE v. HAROLD FRANK HENDERSON, JR.

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2004-D-2780     J. Randall Wyatt, Jr., Judge**

---

**No. M2005-00902-CCA-R3-CD - Filed January 31, 2006**

---

The defendant, Harold Frank Henderson, Jr., pled guilty to aggravated assault in return for a four-year sentence served in a manner to be determined by the trial court. The trial court ordered the defendant to serve his sentence in confinement, and the defendant appealed. Following our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J.C. MCLIN, J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Jeffery A. DeVasher (on appeal), and Jonathan F. Wing (at trial) for the appellant, Harold Frank Henderson, Jr.

Paul G. Summers, Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and Lisa Naylor, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

On November 12, 2004, the Davidson County Grand Jury indicted the defendant for attempted first-degree murder. On February 4, 2005, pursuant to a plea bargain agreement, the defendant pled guilty to aggravated assault.

At the guilty plea hearing, the state presented the facts underlying the guilty plea as follows:

[O]n July 31st, 2004, at approximately 1:40 a.m., Metro police officers responded to a 911 hangup call at 1005 Halcyon Avenue here in Davidson County.

Upon arriving, officers went to the rear upstairs apartment. No one answered when they knocked. The officers then heard a female screaming inside the apartment. Through the glass in the door, officers observed a female fall to the floor inside the apartment and the defendant standing behind her. The female was crying and screaming for help. The officers forced entry into the apartment and took the defendant, Harold Henderson, into custody. The victim, Shelia Wallace, was lying face-down on the floor and was unable to talk and could barely breath.

The victim was eventually able to relate what had happened to the officers. When the victim had returned home that night, the defendant was standing there on the porch waiting to pick up his belongings that were inside her home. The defendant went inside the house and got his things and put them outside on the porch. As the victim was trying to close the door, the defendant forced his way inside. The defendant followed the victim and fought with her to obtain the telephone. The defendant put his hands around the victim's neck and began choking her. The defendant continued to choke the victim, saying that he was going to kill her, that he had nothing to lose. The victim heard the police officers arrive there at the house and somehow managed to get away from the defendant. The victim was transported to Vanderbilt Hospital.

The trial court accepted the defendant's plea and set a sentencing hearing to determine the manner of service of the sentence.

At the sentencing hearing, the defendant testified that being in custody had taught him a lesson, and he felt very sorry for his actions. He promised that if granted probation, he would stay away from the victim, report to his probation officer, and stay out of trouble. The defendant testified that at the time of his arrest, he had been working at a restaurant for three months and had worked for a plumbing company for twenty years. He also said that he regularly attended church. The defendant admitted that he called the victim from jail, and that she hung up on him. A letter was submitted on behalf of the defendant from the pastor at the church the defendant attended. In the letter, the pastor indicated his support of the defendant and offered to help the defendant with rehabilitation. This letter was submitted into evidence at the sentencing hearing.

The defendant's mother, Jane Henderson, also testified at the sentencing hearing. Ms. Henderson testified that the defendant had a normal childhood but quit school in the tenth grade because "he just didn't want to go to school no more." According to Ms. Henderson, at the time of the incident, the defendant alternated between staying at her place and staying with the victim. She testified that the defendant was employed at a restaurant and had also done plumbing work on and off for the past several years. Ms. Henderson testified that she would allow the defendant to live with her if he was placed on probation and would assist and support him any way she could. She described the defendant as "a very gentle and compassionate person" and testified that she had never known him to be violent or aggressive.

The victim testified that the defendant was her boyfriend at the time of the assault. She explained that she sustained extensive bruising through her shoulder area, where the defendant had placed his knees on her. She testified that she underwent extensive x-rays and was unable to speak because the defendant choked her. She further explained that after the assault she was having difficulty coping and "would like to . . . get the type of counseling" necessary to "be able to have a normal life again." The victim recalled that she disagreed with the prosecutor's decision to allow the defendant plead to a lesser charge. She also testified that the defendant previously had been charged with trespassing for breaking her car window, but she declined to pursue the charge because he apologized. On cross-examination, the victim testified that she obtained an order of protection after the assault and insisted that the defendant violated the order by calling her from the jail.

The pre-sentence report was introduced into evidence at the sentencing hearing. The report revealed that the defendant had four convictions for criminal trespassing, a conviction for violating an order of protection, a conviction for possession of drugs, a conviction for possession of narcotic equipment, and a previous conviction for aggravated assault.[1]

Before reaching its decision, the court also took into account the testimony of Pastor Goodwin, which took place at the defendant's hearing on a motion to reduce bond. At that hearing, Pastor Goodwin testified that he had known the defendant for the defendant's entire life. Pastor Goodwin said that he had always known the defendant to be reliable, and he would help the defendant "get on his feet." On cross-examination, Pastor Goodwin related that he was very surprised to hear about the defendant's prior arrests and failures to appear.

After hearing the testimony and reviewing the pre-sentence report, the trial court ordered the defendant serve his four-year sentence in total confinement. The defendant appealed.

## ANALYSIS

In this appeal, the defendant challenges his sentence of confinement. Specifically, he argues that the trial court should have given him a split sentence of confinement and probation. This court's review of a challenged sentence is a de novo review of the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). This presumption of correctness is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999). However, if the record shows that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-101(d), Sentencing Commission Comments.

---

[1] In his brief, the defendant suggests that his aggravated assault conviction was actually a misdemeanor assault conviction because he only received a sixty day sentence. Whether this is true or not has no impact on our analysis.

In conducting our de novo review of a sentence, this court must consider (a) the evidence adduced at trial and the sentence hearing; (b) the pre-sentence report; (c) the principles of sentencing; (d) the arguments of counsel as to sentencing alternatives; (e) the nature and characteristics of the offense; (f) the enhancement and mitigating factors; and (g) the defendant's potential or lack of potential for rehabilitation or treatment. *Id.* §§ 40-35-103(5), -210(b).

Generally, considerations relevant to determining a defendant's eligibility for alternative sentencing are relevant to determining suitability for probation. *See Ashby*, 823 S.W.2d at 169. A defendant is presumed to be a favorable candidate for alternative sentencing if the defendant is an especially mitigated or standard offender convicted of a Class C, D, or E felony and there exists no evidence to the contrary. Tenn. Code Ann. § 40-35-102(6). However, this presumption is unavailable to a defendant who commits the most severe offenses, has a criminal history showing clear disregard for the laws and morals of society, and has failed past efforts at rehabilitation. *Id.* § 40-35-102(5); *State v. Fields*, 40 S.W.3d 435, 440 (Tenn. 2001). Also, the presumption in favor of alternative sentencing may be overcome by facts contained in the pre-sentence report, evidence presented by the state, the testimony of the accused or a defense witness, or any other source, provided it is made a part of the record. *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

Tennessee Code Annotated section 40-35-103 provides guidance as to whether the trial court should grant alternative sentencing or sentence the defendant to total confinement. Sentences involving confinement should be based upon the following considerations:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. . . .

. . . .

(5) The potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed. . . .

Tenn. Code Ann. § 40-35-103(1), -(5).

A defendant is eligible for probation if the actual sentence imposed is eight years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. *See* Tenn. Code Ann. § 40-35-303(a). A trial court shall automatically consider probation as a sentencing alternative for eligible defendants. *Id.* § 40-35-303(b). However, entitlement to probation is not automatic and the defendant still bears the burden of proving suitability for full probation. *Id.*, Sentencing Commission Comments; *State v. Davis*, 940 S.W.2d 558, 559 (Tenn. 1997).

Among the factors applicable to a probation consideration are the circumstances of the offense, the defendant's criminal record, social history and present condition, and the deterrent effect upon and best interest of the defendant and the public. *See State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). Notably, the nature and circumstances of the offense may on occasion be so egregious as to preclude the grant of probation. *See State v. Poe*, 614 S.W.2d 403, 404 (Tenn. Crim. App. 1981). However, in order to warrant denial on that basis, the circumstances must be "especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree" and the nature of the offense must outweigh all factors favoring probation. *State v. Travis*, 622 S.W.2d 529, 534 (Tenn. 1981)); *see also State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991).

After the sentencing hearing, the trial court concluded:

> The Court finds that the Defendant's conviction of a Class C felony affords him the presumption of eligibility for alternative sentencing, however, the nature of the conviction being a violent offense against the person precludes placement in a community corrections program. *See* T.C.A. § 40-36-106(a). The Court finds that the remaining possibility for alternative sentencing would involved some form of probation, and the Court is required to consider probation in determining the appropriate manner of service.

> The Court is of the opinion that outside of the support of the Defendant's mother, Jane Henderson, and Pastor Curtis Goodwin, Sr., of the Watson Grove Missionary Baptist Church, the Court has only slight assurance that the Defendant is a suitable candidate for probation. The Court finds that little evidence was presented to give the Court insight into the Defendant's potential for rehabilitation or treatment. The Court finds that the Defendant is not married to [the victim], does not have children with her, and has no other significant ties to her. In this case, however, the Court finds that the only assurance it has that the Defendant will refrain from having contact with [the victim] is his statement that he will have nothing more to do with her or her children. The Court finds that the Defendant violated an Order of Protection by calling [the victim] from jail, while he was awaiting the disposition of this case. The Court further finds that the Defendant has four (4) prior convictions for Criminal Trespass, and one prior conviction for Aggravated Assault. The Court is of the opinion that these facts combined with the nature and circumstances of the offense, which could have easily had tragic consequences had officers not timely intervened, warrant the denial of probation. The Court is of the opinion that the incarceration of the Defendant is the only alternative to assure the safety of [the victim] and her children.

> Furthermore, the Court cannot overlook the testimony of [the victim], in which she described the Defendant's reaction to her refusal to allow the Defendant to spend the night in her house and her request for him to leave. The Court finds that

[the victim] attempted to call 911 in fear for her safety, after the Defendant became visually upset with her. The Court finds that the Defendant hit the phone out of her hand, knocked her to the ground, pinned her arms down with his legs, and began choking her with his hands. The Court finds that [the victim's] gasps for air and cries for help were mimicked by the Defendant, as he pinned her down and choked her. The Court finds that the Defendant then told [the victim] that he was going to kill her, took the pillow case from a pillow, and began strangling her with it. The Court finds that [the victim] was miraculously able to break free and lunge into the hallway as police responding to the 911 call saw the struggle and entered the house. The Court is of the opinion that the Defendant's attack on [the victim] in her home was especially violent. The Court is further of the opinion that the Defendant's method of taunting [the victim] as she cried out for help while he choked her, and telling her he was going to kill her, before using a pillow case to strangle her, is shocking, reprehensible, and shows extreme cruelty. The Court is therefore of the opinion that the nature and circumstances of the offense are such that a sentence of total confinement is necessary to avoid depreciating the seriousness of the offense, and to protect [the victim] and her children.

To begin, from our view of the record, the trial court considered the sentencing principles and all relevant facts and circumstances; therefore, our review is de novo with a presumption of correctness. Following our review, we conclude the record supports the trial court's sentence of total confinement. First, the defendant's pre-sentence report reveals a rather extensive criminal record consisting of aggravated assault, four criminal trespasses, possession of drugs, possession of narcotic equipment, and violation of an order of protection. Second, the circumstances of this offense show extreme cruelty, in our view beyond those of a typical aggravated assault, in that the defendant taunted the victim as she cried for help and told her he was going to kill her as he used a pillow case to strangle her. Last, the only evidence indicative of the defendant's potential for rehabilitation is the testimony of his mother and his pastor that they would do whatever they could to help rehabilitate him. Contrary to this testimony, however, is evidence in the record that in violation of an order of protection, the defendant telephoned the victim from jail. This disregard of a court order reflects poorly on the defendant's potential for rehabilitation. Accordingly, we conclude the defendant has not met his burden of showing the trial court improperly denied him some form of alternative sentencing; thus the judgment of the trial court is affirmed.

## CONCLUSION

Based on our review of the record, the parties' briefs, and the applicable law, we affirm the trial court.

_____
J.C. McLIN, JUDGE