# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT JACKSON

Assigned on Briefs November 10, 2009

## STATE OF TENNESSEE v. ANTONIO HILL

**Direct Appeal from the Criminal Court for Shelby County**
**No. 08-00829     Chris Craft, Judge**

---

**No. W2009-00280-CCA-R3-CD  - Filed March 24, 2010**

---

The defendant, Antonio Hill, was convicted by a Shelby County jury of robbery, a Class C felony, and attempted robbery, a Class D felony, as lesser included offenses of the indicted offenses of aggravated robbery and attempted aggravated robbery.  The trial court subsequently sentenced the defendant to concurrent sentences of five years and three and one-half years for the respective convictions.  On appeal, the defendant raises the single issue of whether his sentence is excessive.  Specifically, he contends that the trial court erred in considering the enhancement factor that the defendant possessed or employed a firearm during the commission of the offenses based upon the jury's rejection of the greater offenses, which included possession of a firearm as elements of the offense.  Following review of the record and applicable sentencing law, we affirm the sentences as  imposed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J.C. MCLIN, JJ., joined.

Brett B. Stein, Memphis, Tennessee, for the appellant, Antonio Hill.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William L. Gibbons, District Attorney General; and Pamela Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual Background

The case against the defendant, along with three co-defendants, arose from their actions of robbing and attempting to rob Daryl Woods and James Brown in a Shelby County

park. The evidence adduced at trial was that Woods was in contact with a girl, whom he knew as "Renee," over the internet and that the two agreed to meet. After multiple conversations on the phone, a meeting was arranged. Woods asked Brown to accompany him, and the two proceeded to a gas station in the neighborhood. Another phone call was made to "Renee," who then informed the two men that she and her cousin were in a nearby park. At this point, Woods and Brown proceeded to the park in Brown's truck.

Upon arrival, Woods and Brown observed two women standing near the basketball court in the park. Woods called out, asking which one was "Renee." The women refused to approach the truck so Woods exited and proceeded toward them. Brown remained in the truck. As Woods approached, a man with a gun "came up out of nowhere and he had the gun in [Woods] face" and demanded money. Woods began backing up toward the truck, yelling that he had no money in an attempt to alert Brown to the robbery. As Woods approached the truck, the man, later identified as Demetrius Smith, told him to hand over the money or he would "start shoot[ing]." Upon seeing what was occurring, Brown emerged from the truck, taking with him his Glock .357 caliber pistol. During the ensuing seconds, Woods dropped to the ground and crawled to the rear of the truck, leaving Smith and Brown near the front. Woods then proceeded to run to a nearby gas station. As he ran, Woods saw a second male approaching Brown and Smith, and he heard gunshots as he fled. Upon reaching the store, Woods called the police.

Brown, still at the truck, gave Smith his wallet. At that point, a second man, later identified as the defendant, approached and said that they should take Brown's truck. Thereafter, Brown and Smith attempted to jump inside the passenger side of the truck at the same time, and a weapon discharged. Brown acknowledged firing his weapon twice before falling out of the truck. Smith then drove away in Brown's truck. As Brown ran after the truck, he heard shots from behind him where he knew the defendant was. Brown ran to a friend's home and phoned the police.

Shortly thereafter, Officer Robert Strickland of the Memphis Police Department responded to a "man down" call and found Smith bleeding from a gunshot wound to the groin area. Paramedics were called, and Smith was transported to a local hospital. On the scene, Officer Strickland followed a visible blood trail, which led to a red F-150 truck in which there was "a lot of blood." Moments later, Officer Strickland was informed of a car jacking which had occurred down the street. He then drove to the store where Woods was, and they returned to the scene. Additionally, Brown was picked up at his friend's home and surrendered his gun to police. Officer Strickland obtained a description of the robbers from the two victims.

At the same time, Sergeant Hardaway was dispatched to the hospital where Smith had been transported. Prior to his arrival, he had been informed of the robbery. Upon arrival, he was approached by three people matching the descriptions given of the two females and the second robber. They approached the officer and inquired as to the condition of their friend Smith, acknowledging that they had been with him earlier in the evening when he had been shot. The three were detained for questioning.

The Crime Scene Unit later processed Brown's truck. A bullet hole was found in the driver's door, a bullet fragment in the floor, and a bullet strike mark on the tailgate. A bullet fragment was also found in the tailgate of the truck.

Upon being questioned, the defendant admitted his presence at the robbery but denied any involvement. He claimed that he went to the park with the two females in order to meet a man "to get some money for . . . rent[.]" He further asserted that he and the two females ran when one of the men they were supposed to meet attempted to pull one of the females into the truck. One of the females, co-defendant Sherelle Clark, admitted that she was involved in the robbery.

Based upon the foregoing, the defendant was indicted by a Shelby County jury for aggravated robbery and attempted aggravated robbery. Following a jury trial, he was convicted of the lesser offenses of robbery and attempted robbery. At a later sentencing hearing, co-defendant Smith testified regarding the facts of the case, including the fact that he gave the defendant a gun prior to their going to the park. The defendant was subsequently sentenced to concurrent sentences of five years and three years and six months. Following the denial of his motion for new trial, the defendant filed the instant timely appeal.

**Analysis**

On appeal, the defendant raises the single issue of whether his sentence is excessive because the "court erred in considering as an enhancement factor in sentencing the defendant the fact that the defendant was the one who was in possession of a firearm." Specifically, he contends that the factor should not have been applied because the jury, by virtue of their convicting the defendant of lesser included offenses which did not require a weapon in their commission, rejected the fact that the defendant was in possession of a firearm. He further argues, relying on *Gomez v. State*, that application of the factor violated his Sixth Amendment right because it was based upon "judicially determined facts not otherwise reflected by the jury's verdict or admitted by the defendant."

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. T.C.A. § 40-35-401 (2006), Sentencing

Comm'n Comments; *see also State v. Arnett*, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. T.C.A. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Pettus*, 986 S.W.2d 540, 543-44 (Tenn. 1999); *see also State v. Carter*, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely *de novo* without the presumption of correctness. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991); *see also Carter*, 254 S.W.3d at 344-45. In conducting a *de novo* review of a sentence, this court must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and argument as to the sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. T.C.A. § 40-35-210(b) (2006); *see also Carter*, 254 S.W.3d at 343; *State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002).

Initially, we note that the defendant's reliance upon *State v. Gomez* is misplaced. *See State v. Gomez*, 239 S.W.3d 733, 740 (Tenn. 2007) ("*Gomez II*"). The defendant is correct that under the law prior to the 2005 amendments to our sentencing act, our supreme court had held that a trial court's enhancement of a defendant's sentence on the basis of judicially determined facts other than a defendant's prior convictions violated that defendant's constitutional rights under the Sixth Amendment to the United States Constitution. *Id*. at 740. However, the crimes for which the defendant stands convicted occurred in 2007, well after the enactment of the amendments. *See* T.C.A. § 40-35-210 (2006), Compiler's Notes.

The amended statute no longer imposes a presumptive sentence. *Carter*, 254 S.W.3d at 343. As further explained by our supreme court in *Carter*,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." . . . Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," . . . a punishment sufficient "to prevent crime and promote respect

for the law," . . . and consideration of a defendant's "potential or lack of potential for . . . rehabilitation[.]"

*Id*. (footnote and citations omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. *Id*. Under current sentencing law, the trial court is, nonetheless, required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. *Id*. at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. *Id*. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentence. *Id*. at 344.

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the enhancing and mitigating factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancing factors have been evaluated and balanced in determining the sentence. *Id*. at 343. The trial court may apply enhancement factors so long as they are "appropriate for the offense" and "not already an essential element of the offense." T.C.A. § 40-35-210(e). If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is *de novo*. *Carter*, 254 S.W.3d at 345.

In sentencing the defendant in this case, the trial court found three applicable enhancement factors: (1) that the defendant was a leader in the commission of an offense that involved two or more criminal actors; (2) that the defendant was adjudicated to have committed offenses as a juvenile which would have been felonies if he had committed them as an adult; and (3) that the defendant possessed or employed a firearm during the commission of the offenses. *See* T.C.A. § 40-35-114(2), (9), & (16) (2006). As noted, the defendant contests only the application of the factor regarding possession of a firearm. Though review of the remaining factors is not necessary, we note that the record supports their application.

With regard to the possession of a firearm factor, the defendant contends that the record does not support its application because the jury, by virtue of its verdict, finding the defendant not guilty of the greater offense, which included possession of a weapon as an element, determined that the defendant, in fact, was not in possession of a weapon. We

disagree that the jury's verdicts preclude application of the factor and conclude that the records of the trial and sentencing hearings support application. *See* T.C.A. § 40-35-210(b)(1), (5) (2007) (requiring trial court to consider any evidence from both the trial and the sentencing hearing, as well as evidence and information offered by the parties on the mitigating and enhancement factors, before imposing sentence). At trial, although he did not see the defendant in possession of a gun, Brown noted that shots were fired from the direction where the defendant was standing as Smith left the scene in the truck. Moreover, investigators found both a bullet strike and a bullet fragment in the tailgate of the truck, which, based upon Brown's testimony, would have been fired from the direction of where the defendant was standing. Additionally, at the sentencing hearing, co-defendant Smith testified that he gave the defendant a gun prior to the robbery. Based upon this evidence, we cannot conclude that the trial court erred in finding the presence of this factor.

Finding no error in the court's application of enhancement factors and that the trial court made an affirmative showing of its consideration of the facts and circumstances, as well as the purposes and principles of sentencing, we must afford the sentencing decision the presumption of correctness. The defendant has failed to carry his burden of demonstrating that the sentences are erroneous. As such, the sentences are affirmed as imposed.

## CONCLUSION

Based upon the foregoing, the sentencing decision of the Shelby County Criminal Court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE