IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 27, 2010 Session

## STATE OF TENNESSEE v. BOBBY DALE PARRIS

**Direct Appeal from the Criminal Court for Bradley County**
**No. M-04-844     Carroll Ross, Judge**

_____

**No. E2009-01992-CCA-R3-CD Filed October 8, 2010**

_____

In 2006, the defendant, Bobby Dale Parris, pled guilty to the second degree murder of his wife, who died on September 16, 2004.  The trial court sentenced him, under the 2005 amendments to the 1989 Sentencing Act, as a violent offender to twenty years at 100% in the Tennessee Department of Correction.  On direct appeal, this court vacated the defendant's sentence and remanded for resentencing under the 1989 Sentencing Act after concluding that the trial court erred in sentencing the defendant under the 2005 amendments because the defendant had not waived his *ex post facto* rights.  Upon remand, the trial court again sentenced him to twenty years, opining that the defendant's sentence was the same under either the pre-2005 or post-2005 sentencing statutes.  The defendant appeals his sentence, arguing that the trial court did not consider mitigating factors as required by Tennessee Code Annotated section 40-35-210.  Following our review of the parties' briefs, the record on appeal, and the applicable law, we vacate the trial court's sentencing order and remand for a new sentencing hearing in accordance with the 2005 Sentencing Act.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Vacated and Remanded**

J.C. MCLIN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J. and JAMES CURWOOD WITT, JR., J., joined.

James F. Logan, Jr., Cleveland, Tennessee, for the appellant, Bobby Dale Parris.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Kristie Luffman, Drew Robinson, and John Williams, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On January 9, 2006, the defendant, Bobby Dale Parris, entered an open plea to second degree murder. At the guilty plea hearing, the state submitted that, had the matter gone to trial, it would have proven that the defendant shot his wife in their home on September 13, 2004. The trial court held a sentencing hearing on April 10, 2006. In our opinion on the defendant's first appeal, this court summarized the sentencing hearing as follows:

[T]he State and the defendant stipulated to the defendant's pretrial confessions and to certain information in the presentence report, including the defendant's prior misdemeanor criminal history for various drug and alcohol related convictions.

The victim's sister, Sharlene Mikel, testified that her sister's murder devastated her family. She further testified that the defendant "was always drunk" when she saw him. On the night of the murder, Ms. Mikel spoke with the victim at about 8:15 p.m. During the conversation, the victim asked for a second phone number where Ms. Mikel could be reached in case of necessity.

The victim's other sister, [Darlene] Pippinger, also testified that on the night of the shooting, September 13, 2004, she was admitted to Erlanger Hospital for surgery on her two broken feet. She refused the surgery to stay with the victim, who had arrived at the hospital via Life Force due to the gunshot wound to her head. Ms. Pippinger stayed with the victim until her death on September 16, 2004.

The victim's sister-in-law, Connie Mikel, testified that she had known the victim for 21 years. She testified that the defendant had physically and verbally abused the victim in the past. Ms. Mikel also testified that due to the victim's death, Ms. Mikel's daughter has had to move back into her house, her daughter suffers from nightmares, and Ms. Mikel's husband "tears . . . up" everyday.

The victim's youngest son, Tommy Hesson, testified that his mother and the defendant married when he was six years old. He testified that he was "extremely close" to his mother because she was both a father and a mother to him. Mr. Hesson also testified that he developed a bond with the defendant over the years and that he cared about the defendant. He testified that the victim and the defendant argued frequently, and several weeks prior to the shooting they argued about getting a divorce.

On the night of the shooting, Mr. Hesson was visiting the victim, and the defendant arrived home intoxicated. The victim and the defendant began arguing, and the victim informed Mr. Hesson that she did not need him to stay with her and said that "it was the same old thing." Thus, he left the house, but shortly after he left, he passed police cars driving toward the victim's house. Mr. Hesson testified that everyday he regretted leaving the house because if he had not left, he possibly could have intervened and prevented the shooting.

Mr. Hesson also testified that he forgave the defendant for what he did, but that no amount of jail time could replace his mother.

The defendant's brother, Steve Parris, testified on the defendant's behalf that the defendant had a drinking problem at the time of the shooting. After the shooting and while on bond, the defendant lived with Mr. Parris. Mr. Parris testified that the defendant worked, helped with expenses, stopped drinking alcohol and smoking marijuana, and expressed remorse for what he had done.

The defendant testified that he pleaded guilty to second degree murder even though defense counsel informed him that it was reasonable that he could be found guilty of a lesser included offense. He testified that he never blamed anyone else for his wife's murder but claimed that his drinking alcohol played "a big role in it."

On the night of September 13, 2004, he testified that he and his wife argued and struggled. He then left the room, retrieved one of his guns, and shot his wife in the head. After the shooting, he called 9-1-1. The defendant testified that he did not intentionally hurt his wife that night, and he denied physically and verbally abusing her prior to September 13.

At the sentencing hearing, the defendant apologized to the victim's family. He further testified that he has suffered every night for what he did.

On cross-examination, the defendant admitted that he had been convicted of several alcohol and drug related misdemeanor offenses. He admitted that he continued to commit these type of offenses even after being convicted.

*State v. Bobby Dale Parris*, No. E2006-00893-CCA-R3-CD, 2007 WL 1498466, at *1-2 (Tenn. Crim. App., at Knoxville, May 23, 2007) ("*Parris I*"). The defendant argued that the

court should consider as mitigating factors that he was remorseful, had accepted responsibility for the offense, and no longer used alcohol or marijuana. *Id*. at \*3. The trial court determined that no mitigating factors were present and that two enhancement factors applied: (1) the defendant employed a firearm in the commission of the offense ("enhancement factor 9"), and (2) the defendant had a prior criminal history beyond that necessary to establish the range ("enhancement factor 2"). *Id*. The court sentenced him as a violent offender to twenty years at 100% in the Tennessee Department of Correction.

The defendant appealed his sentence to this court, arguing that his sentence was excessive. *Inter alia*, he argued that "the trial court improperly failed to find any mitigating factors." *Parris I*, at \*3. This court, however, did not reach that issue because it concluded that the trial court erred by sentencing him under the 2005 amendments to the 1989 Sentencing Act when the defendant had not executed a proper waiver of his *ex post facto* rights, which the law required because the crime occurred prior to the effective date of the statute while the sentencing occurred afterwards. This court vacated the defendant's sentence and remanded to the trial court "for resentencing under the 1989 Sentencing Act." *Id*.

The trial court held a resentencing hearing on August 13, 2007. The defendant submitted that he had, by that time, properly filed a waiver of his *ex post facto* rights and elected that the court sentence him under the 2005 amendments to the 1989 Sentencing Act. The state contended that this court's opinion required the trial court to apply the 1989 Sentencing Act and, in accordance with *Parris I*, at \*4, withdrew enhancement factor 9 from the court's consideration. The defense presented several documents as evidence in support of mitigation: the report from the Cleveland Bradley Communications Center detailing the defendant's 9-1-1 call and documents purporting to be a "time-line of the statements that [the defendant] gave to . . . law enforcement." The defense further submitted, without documentation or testimony, that he was enrolled in the drug and alcohol rehabilitation program at the penitentiary and had completed an anger management course, which took place after his initial sentencing. The defendant argued that the court should consider as mitigating factors that "there was an immediate cooperation with law enforcement[;] . . . there was an initial, immediate acceptance of responsibility[;] . . . [and] that he embarked upon a course of conduct for rehabilitation from his drug and alcohol problem." The trial court took the matter under consideration. On January 14, 2008, the court "ratified and affirmed in all respects" the defendant's original sentence of twenty years, opining that "the defendant should receive a sentence of twenty years in the Department of Correction[] regardless of whether the defendant is sentenced under the Criminal Sentencing Reform Act of 1989 or the Criminal Sentencing Reform Act of 2005."

According to the defendant, he filed a petition for post-conviction relief after learning that his counsel did not file a notice to appeal the trial court's January 14 sentencing order. The petition is not in the record before this court. The post-conviction court's judgment, however, reveals that the post-conviction court heard the matter on August 10, 2009, and subsequently found the defendant's allegations in the petition to be true. The post-conviction court granted the petition and vacated the January 14, 2008, sentencing order. The court then "ratified, affirmed and reinstituted" the "original Sentencing Order hereinbefore imposed in this cause" as of the date the court entered the post-conviction judgment. The court further "reinstituted" its opinion "that the Defendant should receive a sentence of twenty years in the Department of Correction[] regardless of whether the Defendant is sentenced under the Criminal Sentencing Reform Act of 1989 or the Criminal Sentencing Reform Act of 2005 . . . ." The defendant filed a notice of appeal of the trial court's original sentencing order on September 23, 2009.

**Analysis**

On appeal, the defendant contends that he properly elected for the court to sentence him under the 2005 amendments. He argues that the trial court erred in sentencing him to twenty years under the 2005 Sentencing Act because of the state's withdrawal of enhancement factor 9 and the trial court's failure to consider mitigating factors. The state agrees that the defendant executed a waiver of his *ex post facto* rights after this court remanded the case to the trial court. However, the state submits that it did not withdraw enhancement factor 9 and that the trial court properly sentenced the defendant.

This court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. *State v. Pettus*, 986 S.W.2d 540, 543 (Tenn. 1999). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. *State v. Poole*, 945 S.W.2d 93, 96 (Tenn. 1997).

The burden is upon the appealing party to show that the sentence is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments. In conducting our review, we are required, pursuant to Tennessee Code Annotated section 40-35-210, to consider the following factors in sentencing:

> (1) [t]he evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he

nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40-35-113 and 40-35-114; and (6) [a]ny statement the defendant wishes to make in the defendant's own behalf about sentencing.

Prior to 2005, the Sentencing Act set forth a "presumptive sentence" to be imposed within the applicable range: the minimum sentence for all felonies other than Class A felonies, and the midpoint sentence for Class A felonies. *Id.* § 40-35-210(c) (2003). Pursuant to the 2005 amendments, our Sentencing Act has abandoned the statutory minimum sentence and renders enhancement and mitigating factors advisory only. *See id.* §§ 40-35-114, -35-210(c). The 2005 amendments set forth certain "advisory sentencing guidelines" which the trial court is required to consider but is not bound by. *See id.* § 40-35-210(c). Although the application of factors is advisory, a court shall consider "[e]vidence and information offered by the parties on the mitigating and enhancement factors in §§ 40-35-113 and 40-35-114." *Id.* § 40-35-210(b)(5). The trial court is also required to place on the record "what enhancement or mitigating factors were considered, if any, as well as the reasons for the sentence, to ensure fair and consistent sentencing." *Id.* § 40-35-210(d).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after giving due consideration and proper weight to the factors and principles set out under sentencing law, and the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. *State v. Hooper*, 29 S.W.3d 1, 5 (Tenn. 2000).

In this case, the defendant was entitled to execute a waiver of his *ex post facto* rights and elect to be sentenced under the 2005 sentencing act. *See State v. Quincy Bryan Banks*, No. M2007-00545CCA-R3-CD, 2008 WL 1699440, at *7 (Tenn. Crim. App., at Nashville, April 11, 2008) (*Banks I*). The record reveals that the defendant properly waived his *ex post facto* rights. At the resentencing hearing, however, the state contended that this court's opinion in *Parris I* required the trial court to sentence the defendant under the pre-2005 sentencing act. The state further argued that the court should not allow the defendant to put on new proof regarding mitigating factors. The defense submitted that it could show that the defendant engaged in a course of conduct to rehabilitate himself by participating in a drug and alcohol rehabilitation program and an anger management program at the penitentiary. On January 14, 2008, the trial court ordered the defendant to serve twenty years, without determining which sentencing act applied and without placing on the record its reasons for reaching its decision. After the defendant's successful post-conviction proceeding, however, the trial court vacated the January 14 order and reinstated its original sentencing order, which this court had vacated on direct appeal.

Our review of the defendant's sentence is *de novo* with no presumption of correctness because, at the resentencing hearing, the defendant presented new facts in support of mitigation, but the record is void of any consideration of that proof by the trial court. Upon remand, the trial court should have held a sentencing hearing that met the requirements of Tennessee Code Annotated section 40-35-209, which provides that "the court shall afford the parties the opportunity to be heard and present evidence relevant to the sentencing of the defendant" and that the record of the hearing "shall include specific findings of fact upon which application of the sentencing principles was based." The parties were not limited to the proof presented at the original sentencing hearing. *See Banks I*, at *7 ("At the re-sentencing hearing, neither the State nor the Appellant is confined to the proof at the prior hearing and may introduce additional proof as relevant to the hearing and as authorized by the applicable sentencing law.") Because the trial court failed to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. *Poole*, 945 S.W.2d at 96 (Tenn. 1997).

We have considered the defendant's request to modify his sentence based upon our review of the record, despite the trial court's lack of findings. We cannot do so in this case because "[a]n appellate court cannot review either the length or method of serving a sentence unless the findings of the trial court are contained in the record." *State v. Ervin*, 939 S.W.2d 581, 584 (Tenn. Crim. App. 1996). We decline to consider the trial court's original sentencing order as a record of the trial court's findings because this court vacated that sentencing order in *Parris I* and because the trial court did not conduct a new sentencing hearing in compliance with that opinion and the sentencing act. Therefore, we remand this matter to the trial court to conduct a new sentencing hearing in compliance with the 2005 Sentencing Act and to make appropriate findings regarding its sentencing decision. Upon remand, the trial court may consider the evidence presented in the original sentencing hearing, but "neither the [s]tate nor the [defendant] is confined to the proof at the prior hearing and may introduce additional proof as relevant to the hearing and as authorized by the applicable sentencing law." *See Banks*, at *7.

Because of our holding, we do not reach the defendant's issue of whether the trial court erred by failing to consider mitigating factors. However, in the interest of future review, we conclude that the state did not withdraw enhancement factor 9 from the court's consideration. At the resentencing hearing, the state's position was that the trial court should sentence the defendant under the 1989 Sentencing Act, which would have required a jury trial on the issue of whether the defendant used a firearm in the commission of the offense in order for the court to apply enhancement factor 9. However, because the defendant elected to be sentenced under the 2005 amendments, which rendered the enhancement factors

advisory only, the state's position was moot, as was its proposal to withdraw the enhancement factor.

## Conclusion

Based on the foregoing reasons, we vacate the trial court's sentencing order and remand for new sentencing hearing in accordance with the 2005 Sentencing Act. Upon remand, the trial court may consider evidence from the original hearing and any additional proof presented by the parties that is relevant to the hearing and authorized by the applicable sentencing law.

_____
J.C. McLIN, JUDGE