IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 20, 2017

## STATE OF TENNESSEE v. GARY ROBERT BUCHANAN

Appeal from the Criminal Court for Davidson County
Nos. 2015-I-307, 2015-I-562     Cheryl Blackburn, Judge

_____

## No. M2016-01872-CCA-R3-CD

_____

The Defendant, Gary Robert Buchanan, appeals the trial court's imposition of an effective fourteen-year sentence upon resentencing following the revocation of his community corrections. After review, we affirm the sentencing decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Dawn Deaner, District Public Defender; and Jeffrey A. DeVasher (on appeal) and Kristin Neff (at hearing), Assistant Public Defenders, for the appellant, Gary Robert Buchanan.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Glenn R. Funk, District Attorney General; and Megan M. King and Doug Thurman, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

On May 7, 2015, in case number 2015-I-307, the Defendant pled guilty to one count of aggravated assault. At the plea hearing, the State submitted evidence that the Defendant was in an altercation with another man and had pulled a knife. The State noted that there were several witnesses to the incident, and the Defendant gave the knife to the police. The trial court conducted a sentencing hearing on June 5, 2015. At the hearing, Luis Godoy testified that he was working at his taco stand on March 10, 2015, when he saw the Defendant trying to open the door of a car belonging to one of Mr.

Godoy's customers. Mr. Godoy approached the Defendant and asked him to leave his customers alone. Mr. Godoy told the Defendant that he would give him food if he was hungry. However, the Defendant pushed him, pulled a knife, and tried to stab him three times. A customer called the police, but the Defendant was not picked up.

Mr. Godoy testified that, on a different day, he received a call from a woman who worked nearby informing him that the man with whom he had a fight was trying to break into Mr. Godoy's business. Mr. Godoy testified that customers and workers had stayed away from his food truck following the incident because they were uncomfortable. Mr. Godoy had to raise the salaries of employees who were nervous to come to work, and his wife was upset and wanted him to sell the business.

Sasha Leeth, who works for community corrections in the dual disorder services program, testified that she met with the Defendant after he was referred to the program. She performed an assessment on him and discussed his past treatment for drug, alcohol, and mental health problems. Ms. Leeth discovered that in 2009, the Defendant was diagnosed with "bipolar disorder depressed type as well as mood disorder." She noted that, since the Defendant had been in custody, he had met with counselors but had not been taking medication. Ms. Leeth said that if the Defendant were sentenced to a community corrections program, he should reside in a recovery house due to his substance abuse problems. She also said that the Defendant would need to find full-time employment to pay the fees for living there, as well as attend meetings and counseling to monitor his progress. Further, the Defendant would receive mental health treatment and have to obey a curfew.

The trial court noted that the Defendant had a lengthy record of fifty-seven misdemeanors and six prior felonies and questioned Ms. Leeth as to her opinion of whether the Defendant would succeed in this treatment program. Ms. Leeth said that the Defendant usually committed crimes because of his drug and alcohol problems but that it would be up to the Defendant whether he succeeded. Ms. Leeth noted that the Defendant had had periods of sobriety, but he had also previously been in a recovery house and left after a few days.

The Defendant testified that he wanted to get sober and was embarrassed by his behavior. He said that he would comply with the requirements of treatment. At the end of the hearing, the trial court stated that it was going to sentence the Defendant to a term of three years in community corrections "with the understanding that there could be a much higher sentence." The sentence included the requirements that the Defendant reside in a recovery house and participate in its program, as well as wear monitoring devices.

On June 11, 2015, the Defendant's case officer issued an affidavit showing a violation of the conditions of community corrections, namely that the Defendant was discharged from the recovery house without completing treatment, and the trial court issued an arrest warrant for the Defendant. The Defendant's case officer issued an amended affidavit the next day detailing additional violations of the conditions of community corrections, namely that the Defendant removed his monitoring devices without permission, and the trial court issued a second arrest warrant for the Defendant. At a hearing on June 29, 2015, the Defendant conceded that he had violated the conditions of his community corrections program. The Defendant's original three-year sentence was placed into effect, and he was ordered into a residential drug abuse program.

On July 28, 2015, in case number 2015-I-562, the Defendant pled guilty to one count of theft over $1,000. At the plea hearing, the Defendant testified that he understood that he was agreeing to a four-year sentence as a Range II offender, to be served concurrently with his sentence for aggravated assault. The State submitted that the evidence would have shown that the Defendant was pulled over for a traffic violation on June 13, 2015, during which it was discovered that the car he was driving had been stolen, that he was driving the car without keys, and that he had a revoked driver's license. The trial court held that the Defendant's plea was voluntary and sentenced him to a term of four years in community corrections, concurrent with the earlier assault charge.

On January 4, 2016, the Defendant filed a motion to suspend his sentences due to his pending completion of a residential drug abuse program, and the trial court denied the motion on January 20, 2016. However, the trial court conducted a hearing on the motion on April 13, 2016, at which the court learned that the Defendant had completed a residential drug abuse program, was attending Alcoholics Anonymous meetings and had sponsors, and had a job lined up. At the conclusion of the hearing, the trial court granted the Defendant's motion on both sentences and placed him on concurrent two-year community corrections sentences, ordering him to reside in a recovery house.

Upon an affidavit of the Defendant's case officer, on June 10, 2016, the trial court issued a warrant for the Defendant's arrest due to violation of his community corrections sentence, namely that the Defendant was discharged from the recovery house without completing treatment, tested positive for cocaine, consumed alcohol, and did not attend group counseling sessions. On July 6, 2016, the Defendant's community corrections sentences in both cases, 2015-I-307 and 2015-I-562, were reinstated. On July 7, 2016, the trial court conducted a hearing because the Defendant was having trouble finding an in-house treatment program, and he asked the court to approve his placement at a particular facility. The Defendant told the court that the previous facility he had resided

in had been too "invasive." The trial court ordered the Defendant to reside at his requested facility.

Another affidavit of violation and warrant in both cases was filed on July 12, 2016, specifying that the Defendant was discharged from the recovery house without completing treatment, was arrested for three offenses including theft of a vehicle, disregarded his curfew, and possessed drug paraphernalia. At a hearing on August 10, 2016, regarding the affidavit of violation, Anthony Cherry testified that he was in the bar area of the hotel where he worked when he noticed the Defendant enter and sit next to a window that overlooked the hotel's valet circle. The Defendant told Mr. Cherry that he was waiting for a friend. The Defendant did not seem intoxicated but, in contrast, "was very well spoken." The Defendant ordered a drink and, later, another drink and food. When Mr. Cherry went to get the Defendant's food, the Defendant left the area without paying. Soon thereafter, Mr. Cherry learned that someone had stolen a car from the valet circle.

Officer Corey Hale with the Metro Nashville Police Department testified that on July 11, 2016, he stopped the Defendant for driving with an expired license plate. The Defendant provided Officer Hale a revoked driver's license. The Defendant consented to a search, and Officer Hale found a crack pipe in his pocket. A run of the vehicle's identification number showed that it had been stolen a day or two earlier. The trunk was filled with stolen merchandise from Kroger that Officer Hale estimated to be worth $500 to $1000. The Defendant told Officer Hale that he and a co-defendant had planned to sell the grocery items for drugs. He also told the officer that the car belonged to the co-defendant, but he was driving because he was more familiar with the area. The Defendant did not seem intoxicated to Officer Hale.

Officer Nicholas Smith with the Metro Nashville Police Department testified that he was called to investigate the car theft from the valet circle at the hotel. According to video footage and witness testimony, the person who stole the car was a white male of medium build.

The Defendant testified that he had been unable to get his medication for three weeks. He said that he had stayed at the recovery house for four or five days, but he was unable to find a job and started drinking. He claimed that he was drunk when he took the car from the hotel.

After the testimony, the trial court found that the State had carried its burden of showing that the Defendant violated the requirements of the community corrections program, and then it conducted a resentencing hearing to determine the Defendant's sentence.

At the resentencing hearing, Gwen Brown, the Defendant's mother, testified that the Defendant had had psychological problems since childhood but that his father did not let him see a psychiatrist. She said that the Defendant's crimes were "all related to . . . his psychological behavior." She did not feel that the prison system was helping him. She recalled that the Defendant had been able to remain clean and sober for an extended period in the past. She said that the Defendant had problems when he did not get his medication on a regular basis.

In considering the length of the Defendant's sentence, the trial court found as enhancement factors that the Defendant had a previous history of criminal convictions and criminal behavior in addition to that necessary to establish the appropriate range,[1] had a previous failure to comply with the conditions of a sentence involving release into the community, and was on probation at the time of the offenses. See Tenn. Code Ann. § 40-35-114(1), (8) and (13). The trial court found that no mitigating factors applied to the aggravated assault conviction but that, with regard to the theft conviction, the Defendant neither caused nor threatened serious bodily injury. See id. § 40-35-113(1). The court noted that the Defendant had mental health problems but did not find "that they significantly reduced his culpability." Accordingly, the trial court imposed a sentence of six years on the aggravated assault conviction in case number 2015-I-307 and eight years on the theft conviction in case number 2015-I-562.

In determining that the Defendant's sentences should be served consecutively, the trial court noted that the Defendant had an extensive record of criminal activity but decided to rely on the fact that the Defendant "was on probation . . . in 2015-I-307 when he comitt[ed] 2015-I-562." See id. § 40-35-115(6).

## ANALYSIS

The Defendant argues that the trial court erred in imposing the maximum sentences for his convictions and ordering the sentences to be served consecutively. He contends that the court erred in its application of "one statutory enhancement factor to one of his sentences" and in "failing to apply three statutory mitigating factors to both of his sentences." He also contends that an aggregate sentence of fourteen years is greater than that deserved for the offenses committed and not the least severe measure necessary to achieve the purposes for which the sentence was imposed. The Defendant does not challenge the community corrections revocation.

---

[1]The trial court counted sixty-eight prior misdemeanor convictions and ten prior felony convictions in the presentence report.

When a defendant's community corrections sentence is revoked, the court "may resentence the defendant to any appropriate sentencing alternative, including incarceration, for any period of time up to the maximum sentence provided for the offense committed . . . . The resentencing shall be conducted in compliance with § 40-35-210." Tenn. Code Ann. § 40-36-106(e)(4). A trial court is to consider the following when determining a defendant's sentence and the appropriate combination of sentencing alternatives:

> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

Id. § 40-35-210(b).

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and the sentencing decision of the trial court will be upheld "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." State v. Bise, 380 S.W.3d 682, 709-10 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707.

The Defendant first argues that the trial court erred in its application of "one statutory enhancement factor to one of his sentences." He acknowledges that he was serving a community corrections sentence when he committed the theft offense but

asserts that the trial court erred in applying as an enhancement factor to his aggravated assault conviction that he committed that offense while on probation. He points out that on May 1, 2013, he received a four-year sentence for a theft of property committed on November 9, 2012, but that the record does not show that he was released on probation for that offense. In its discussion of the enhancement factors, the trial court said, "[The Defendant] was on probation from a Division II sentence. So he was on probation at the time these offenses were occurring." From the record shown in the presentence report, it is unclear whether the trial court's statement was a misstatement as to the conviction for aggravated assault. However, even without that factor, the other two enhancement factors found by the trial court clearly apply and more than justify the sentence imposed by the trial court.

The Defendant also argues that the trial court should have considered three additional mitigating factors: his mental health condition, severe drug addiction, and expression of remorse. The trial court was clearly aware of the Defendant's mental health history and drug problems and heard the Defendant's mother's testimony that the Defendant had had psychological issues since childhood. However, in its consideration of mitigating factors, the trial court noted that the Defendant had mental health problems but did not find "that they significantly reduced his culpability." This was a finding completely within the discretion of the trial court. As to the issue of remorse, the record shows that the Defendant has told the court that he was "embarrassed" by his actions on more than one occasion. The Defendant also never took full responsibility for his actions, arguing instead that he was not in control of his faculties because of the combination of drug abuse and not taking his medication. Despite the State's witnesses testifying that he did not appear intoxicated, the Defendant told the court that he was intoxicated when he stole the car, explaining, "I guess I handle alcohol well." The trial court, in an appropriate exercise of its discretion, either refused to consider the Defendant's alleged remorse as a mitigating factor or, if it considered it, gave it very little weight.

In sum, we discern no abuse of discretion in the trial court's imposition of respective six- and eight-year sentences for the Defendant's aggravated assault and theft convictions upon resentencing.

Moreover, a trial court may order multiple sentences to run consecutively if it finds by a preponderance of the evidence that any one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) applies. We review the trial court's consecutive sentencing determinations for an abuse of discretion, with a presumption of reasonableness afforded to the trial court's decision. See State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013) (applying same deferential standard announced in Bise, 380 S.W.3d 682, to the trial court's consecutive sentencing decisions). The record shows that

the trial court properly used its discretion in imposing consecutive sentences, and its decision is presumed reasonable. The court noted that the Defendant, with sixty-eight prior misdemeanor and ten prior felony convictions, was an offender whose record of criminal activity was extensive. Tenn. Code Ann. § 40-35-115(b)(2). Moreover, a trial court may order multiple sentences to run consecutively if it finds by a preponderance of the evidence that any one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) applies. We review the trial court's consecutive sentencing determinations for an abuse of discretion, with a presumption of reasonableness afforded to the trial court's decision. See State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013) (applying same deferential standard announced in Bise, 380 S.W.3d 682, to the trial court's consecutive sentencing decisions). The record shows that the trial court properly used its discretion in imposing consecutive sentences, and its decision is presumed reasonable. The court noted that the Defendant, with sixty-eight prior misdemeanor and ten prior felony convictions, was an offender whose record of criminal activity was extensive. Tenn. Code Ann. § 40-35-115(b)(2). The record supports the court's determination of this factor, and this finding alone is sufficient to impose consecutive sentences. See State v. Mickens, 123 S.W.3d 355, 394 (Tenn. Crim. App. 2003).

The trial court in imposing consecutive sentences also found the factor that the Defendant committed the theft while on probation for the aggravated assault. See Tenn. Code Ann. § 40-35-115(b)(6). However, the record reflects that the Defendant was serving his sentence on community corrections, rather than on probation, when he committed the theft. As a result, this factor does not apply. See State v. Pettus, 986 S.W.2d 540, 544 (Tenn. 1999) (holding that a community corrections sentence is not equivalent to a probation sentence for purposes of imposing consecutive sentencing under Tenn. Code Ann. § 40-35-115(b)(6)). Even though the imposition of consecutive sentencing based on this factor was improper, "only one factor need exist to support the appropriateness of consecutive sentencing." Mickens, 123 S.W.3d at 394; see Tenn. Code Ann. § 40-35-115(b)(2). Further, we cannot conclude that a sentence of fourteen years is greater than that deserved for the offenses committed and not the least severe measure necessary to achieve the purposes for which the sentence was imposed.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the sentencing decision of the trial court.

_____
ALAN E. GLENN, JUDGE

-8-