IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 3, 2021

**STATE OF TENNESEE v. DONALD SCHOENTHAL and TARA NEUTZLER**

**Appeal from the Circuit Court for Carroll County**
**Nos. 18CR188, 18CR189      Donald E. Parish, Judge**

———————————————————

**No. W2019-01529-CCA-R3-CD**

———————————————————

Following the execution of a search warrant on their property, the Defendants, Donald Schoenthal and Tara Neutzler, were separately indicted by a Carroll County Grand Jury in 156-count indictments, which charged each of them with 2 counts of aggravated child neglect or endangerment, 2 counts of attempted aggravated child neglect or endangerment, 34 counts of aggravated animal cruelty, and 118 counts of animal cruelty. The State later dismissed over 120 of these counts. Thereafter, the Defendants separately filed a motion to dismiss the indictment and a motion to suppress evidence.[1] After the trial court denied these motions, Defendant Schoenthal and Defendant Neutzler each entered "best interest" pleas[2] to one count of aggravated animal cruelty (Count 63) and three counts of animal cruelty (Counts 37, 99, and 103). The Defendants' plea agreements, which were accepted by the trial court, stated in part that each Defendant received a sentence of two years for the aggravated animal cruelty count and eleven months and twenty-nine days for each of the three animal cruelty counts, that these sentences would be served consecutively to one another, that the remaining counts of their respective indictments were dismissed, and that the trial court would determine the manner of service of these sentences. Following a sentencing hearing, the trial court ordered Defendant Schoenthal to serve a total of 120 days in confinement and Defendant Neutzler to serve a total of 75 days in confinement before serving the remainder of their sentences on supervised probation. Thereafter, the Defendants appealed their cases, arguing that the trial court erred in denying their motions to suppress, and this court later consolidated these cases into a single appeal. After review, we conclude that this court lacks jurisdiction to consider the suppression issue because no

---

[1] Although these motions were not included in the technical record, the transcript of the hearing on these motions as well as the transcript of the trial court's ruling on these motions were included in the record.

[2] A "best interest" plea, also known as an Alford plea, is one in which the defendant is "unwilling or unable to admit his participation in the acts constituting the crime." North Carolina v. Alford, 400 U.S. 25, 37 (1970).

appeal of right lies for the Defendants pursuant to Tennessee Rule of Appellate Procedure 3(b) and Tennessee Criminal Procedure Rule 37(b)(2). Accordingly, we dismiss the appeal.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and J. ROSS DYER, JJ., joined.

Robert L. Sirianni, Jr. (on appeal), Winter Park, Florida, and George D. Norton, Jr., (at guilty plea hearing and sentencing), Selmer, Tennessee, for the Defendants-Appellants, Donald Schoenthal and Tara Neutzler.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Matthew F. Stowe, District Attorney General; and James B. Webb, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

On April 8, 2018, the Carroll County Sheriff's Department executed a search warrant on the Defendants' property while assisted by members of two nonprofit organizations, the Animal Rescue Corp. and Redemption Road Rescue. On September 6, 2018, the Defendants were separately indicted in 156-count indictments. On March 18, 2019, the State dismissed over 120 of these counts. Thereafter, Defendant Schoenthal and Defendant Neutzler each filed a motion to dismiss their indictments for failure to preserve evidence and a motion to suppress evidence found during the execution of the search warrant.

**Hearing on Motion to Suppress and Motion to Dismiss Indictment.** At the April 26, 2019 hearing on the Defendants' motions to suppress and motions to dismiss the indictment, the Defendants argued that the affidavit for the search warrant failed to establish probable cause, that the search warrant was impeachable because the affiant did not know who took the photographs of the animals attached to the affidavit, that the search warrant was improperly executed because volunteers and third parties aided in the execution of the search warrant, that the search warrant was not broad enough to cover all the evidence seized, and that the collection of evidence concerning the animals called into question the integrity of that evidence. The trial court considered the proof admitted, including the search warrant affidavit and the photographs of the animals subject to the warrant, and heard testimony from the following individuals: the deputy who completed the search warrant affidavit and executed the warrant, other law enforcement officers present at the scene, the man who notified the sheriff's department about the Defendants'

crimes, and the employees and volunteers of the non-profit animal rescue organizations who were present during the execution of the search warrant.

At the conclusion of this hearing, the trial court denied both the motions to suppress and the motions to dismiss the indictment. As to suppression motions, the trial court ruled that "the search warrant affidavit did establish probable cause for its issuance"; that the "Defendants ha[d] not shown that the affidavit contain[ed] any material false statements which were made with the intent to deceive the Court or [any] false statements[,] essential to the establishment of probable cause[,]" that "were recklessly made"; that "the execution of the search warrant was proper even though [law enforcement] was assisted in its execution by persons associated with the two volunteer animal rights groups"; that "[o]nce the custody of the animals was transferred to the Carroll County Sheriff's Department or to its designee pursuant to the statute, . . . no such [additional] warrant was necessary"; and that "[t]he Carroll County Sheriff's Department or it[s] designee . . . had a legal duty to preserve the evidence which here included a duty to reasonably test for the presence of disease or injury" and that "these tests were likely done both for medical care [of the animals] or to determine if medical care was needed and/or the preservation of evidence."

**Motion to Revoke Bond and Plea Submission Hearing.** At the May 22, 2019 hearing on the State's motion to revoke the Defendants' bond, the State explained that it had filed this motion because Defendant Neutzler had received additional criminal charges in Putnam County for Tenncare fraud and because both Defendant Neutzler and Defendant Schoenthal were currently being investigated for animal cruelty to an additional forty-two animals in Putnam County. After the trial court heard the State's proof and arguments from each party, it recessed to consider the motion. When court resumed, the parties informed the trial court that they had reached a plea agreement. Thereafter, the motion hearing was converted to a plea submission hearing, and the State withdrew its motion to revoke the Defendants' bond. At that point, Defendant Schoenthal and Defendant Neutzler each indicated their desire to enter Alford pleas to one count of aggravated animal cruelty (Count 63) and three counts of animal cruelty (Counts 37, 99, and 103) in their respective indictments.

The Defendants then submitted a "Request for Acceptance of Best Interest Plea and Petition to Waive Trial by Jury and to Waive an Appeal," which stated that in exchange for the guilty plea to aggravated animal cruelty in Count 63, each Defendant would receive a sentence of two years as a Range I, standard offender and a fine of $1500 and that in exchange for the guilty pleas to animal cruelty in Counts 37, 99, and 103, each Defendant would receive a sentence of eleven months and twenty-nine days and no fine. The plea documents provided that the sentences for all counts would "run consecutive to each other" and that the trial court would "set a sentencing hearing to determine the manner of service of sentence." Additionally, the plea documents specified that all other remaining counts

of the indictments would be dismissed, that the Defendants would have a ten-year ban on owning or possessing animals, that the Defendants would not be required to pay restitution, that the Defendants would voluntarily dismiss the appeal regarding their pre-conviction security deposit, that the State would withdraw the motion to revoke bond and would not re-file it unless criminal conduct occurred in the future, and that the Defendants would surrender all the animals that had been seized.  Lastly, the plea documents, which were signed by both Defendants, stated, "I fully understand my right to have my case reviewed by an Appellate Court, but hereby express and knowingly waive my right to file a motion for new trial or otherwise appeal the decision made in my case here today."

At the plea submission hearing, Defendant Schoenthal and Defendant Neutzler both acknowledged that they had discussed their respective plea agreements with their attorney and were satisfied with their attorney's advice and representation of them.  The State confirmed that each Defendant was currently charged in a thirty-three-count indictment.

The trial court informed the Defendants that their guilty pleas would create a criminal record for them that could be used to enhance punishment for any later violations of the law.  The court also informed the Defendants of the potential sentence for aggravated animal cruelty as well as animal cruelty.  Then the trial court restated the specific terms of the plea agreement.  Finally, the trial court said, "[A]s to the issue of how this sentence will be served[,] you have agreed that the court will make that determination following the sentencing hearing[.]"  Both Defendants acknowledged that the trial court had correctly stated the terms of their respective plea agreements.

The trial court advised the Defendants of their rights, including the right to plead not guilty, the right to a trial by jury, and the right to represented by counsel at every stage of the proceedings.  The trial court told the Defendants that "by pleading guilty today you will be giving up many of those valuable rights[,]" and the Defendants acknowledged that they understood.  The court informed the Defendants of the additional conditions of their plea agreements, and the Defendants stated that these conditions were a part of their negotiated plea agreement.  The Defendants acknowledged that it was in their best interest to enter these pleas and that they did not have any questions about their respective plea agreements.  The Defendants also denied that anyone had coerced or threatened them in order to get them to enter their pleas.  The trial court determined that the Defendants' best interest/Alford pleas were knowing and voluntary before accepting their pleas.  Prior to the sentencing hearing, Defendant Schoenthal and Defendant Neutzler filed a Sentencing Memorandum, acknowledging that the trial court would "determine the manner of service" of their sentences.

**Sentencing Hearing.**  At the July 22, 2019 sentencing hearing, the trial court recognized that although the Defendants had previously entered their guilty pleas with an

agreed upon sentence, "the manner of the service of that sentence" would be determined by the trial court at the conclusion of the sentencing hearing. The presentence investigation report for each Defendant and the victim impact statement filed by the Animal Rescue Corp. were admitted into evidence. Defendant Schoenthal requested that the trial court grant him full probation while Defendant Neutzler requested judicial diversion.

Defendant Schoenthal gave an allocation. He stated that he was a veteran and that both he and his wife, Defendant Neutzler, had been diagnosed with post-traumatic stress disorder. He also said that Defendant Neutzler had been diagnosed with bipolar disorder. Defendant Schoenthal asserted that he and his wife had decided to start their own business rather than apply for disability. Defendant Schoenthal denied that he and Defendant Neutzler had "purposely mistreated" their animals, and he blamed the contractor who turned them into law enforcement for their legal problems. He said that the animals that he and his wife cared for were "worth a great deal of money" and that because they were forced to surrender their animals and were banned from owning or possessing animals as a condition of the plea agreement, he and Defendant Neutzler were "financially and emotionally ruined" and would have to "reinvent themselves" in order to support themselves and their ten-year-old daughter.

The trial court, in determining the manner of service of the sentences in the plea agreement, stated that it had considered the evidence presented, the allocution statement, the agreements of counsel, the presentence investigation report, the principles of sentencing, the arguments regarding sentencing alternatives, the nature and circumstances of the criminal conduct, the requested mitigating and enhancement factors, and the Defendants' potential for rehabilitation. The court applied one enhancement factor, that "[t]he offense involved more than one (1) victim[,]" because the offenses involved approximately 150 animals that were victimized. Tenn. Code Ann. § 40-35-114(3). However, the court declined to apply the enhancement factor that "[t]he defendant treated, or allowed a victim to be treated, with exceptional cruelty during the commission of the offense" because it found that cruelty was an element of the conviction offenses. Id. § 40-35-114(5). The trial court declined to apply any mitigating factors. See id. § 40-35-113. Although the trial court acknowledged that the Defendants' self-reported assessment of their physical and mental health was "less than ideal," it nevertheless determined that both Defendants would be able to serve their sentences in confinement "without substantial risk to their health." After reviewing the Defendants' employment histories, the court found that Defendant Neutzler had a "fair . . . to good" social history and Defendant Schoenthal had a "fair social history." The court also noted that it had heard "many, many hours of testimony and ha[d] observed, literally, hundreds of photographs, which document[ed] the conditions in which the living, and deceased animals were found in," which were "deplorable." The trial court then made the following findings regarding the Defendants' mistreatment of these animals:

It appears to the Court that financial gain was the main reason motivating [the Defendants'] conduct. This is not a situation in which an owner of an animal did not provide proper care for [the] animal, because of the owner[']s own poor physical or mental health, or even poverty as this Court has sometimes seen in several past, and sad, cases. Rather, the defendants were capable of providing proper care and they did not do so, as a business practice.

Food, water, shelter, veterinary care, medicine, and simple attention to an animal's basic care does cost money. It's obvious, by not spending that money to provide these necessities to these animals, allows the bottom line of a business to be boasted.

The trial court noted that Defendant Neutzler "had no criminal history" but that Defendant Schoenthal had "both prior felony and misdemeanor convictions, which negatively impact[ed] his eligibility for a sentence other than confinement." It noted that Defendant Neutzler character was a "neutral factor" and that while Defendant Schoenthal's criminal history was "negative," his military service was "a positive factor for him." The court acknowledged that both Defendants were "capable of rehabilitation" but that "their rehabilitation would be encouraged by a sentence which makes evident to them the seriousness of these offenses . . . and deters them from . . . [further] conduct[.]" The court determined that both Defendants were "at an increased risk to re-offend[,]" particularly in light of their "similar misconduct in Putnam County, Tennessee" after the Defendants had been charged in this case. In addition, the court found that while "[m]easures less restrictive than confinement ha[d] not been previously applied to [Defendant] Neutzler[,]" they "ha[d] been applied to [Defendant] Schoenthal[.]" It also found that "[a] sentence of full probation would unduly depreciate the seriousness of these offenses." With regard to the nature of the offenses, the court noted that while the offenses in the plea agreement involved four animals, "the actual number of animals harmed [by the Defendants] in Carroll County was approximately one hundred and fifty (150)."

After considering the statutory factors for judicial diversion in Code section 40-35-313, the court found "the instant offenses[,]" along with the "probable additional offenses in Putnam County[,]" took place "over an extended period of time" and "demonstrated a sustained attempt to violate the law" that outweighed the factors that supported judicial diversion and full probation for the Defendants.

At the conclusion of this hearing, the trial court sentenced Defendant Neutzler to "shock incarceration" for sixty days for Count 63 as well as five days' incarceration each for Counts 37, 99, and 103, for a total period of seventy-five days in confinement. The

trial court then sentenced Defendant Schoenthal to "shock incarceration" for ninety days for Count 63 as well as ten days' incarceration each for Counts 37, 99, and 103, for a total period of 120 days in confinement. The court determined that the balance of each Defendants' sentences would be served on supervised probation. Finally, the trial court stated, "<u>Unless an appeal is perfected</u>, the defendants will report to the Carroll County Jail on August 27[], 2019, at 9:00 a.m. to begin the service of these sentences."

The Defendants' judgments of conviction were entered on July 29, 2019. On August 26, 2019, the Defendants appealed their cases, arguing that the trial court erred in denying their motions to suppress. On December 2, 2019, this court consolidated the appeals. Thereafter, the State filed a motion to dismiss the appeal for lack of jurisdiction, arguing that the Defendants on appeal challenged only the trial court's decision denying their suppression motions, that the Defendants had failed to reserve this issue in a certified question of law pursuant to Tennessee Rule of Appellate Procedure 3(b) and Tennessee Rule of Criminal Procedure 37(b)(2), and that the Defendants' voluntary entry of an informed and counseled guilty plea constituted an admission of all facts necessary to convict and a waiver of all non-jurisdictional defects and constitutional irregularities which may have existed prior to entry of the guilty plea, <u>see</u> <u>State v. Rowland</u>, 520 S.W.3d 542, 546 (Tenn. 2017). On July 2, 2020, and July 7, 2020, the Defendants filed a response and amended response, arguing that this court should deny the State's motion to dismiss because the trial court's inadequate plea colloquy raised doubts about the knowing and voluntary nature of the Defendants' guilty pleas, failed to constitute an adequate acceptance of the Defendants' waiver of the right to appeal, and caused substantial uncertainty as to whether the trial court's pronounced sentence granting them an appeal or the sentence in the plea agreement waiving their right to appeal controlled. On August 11, 2020, this court entered an order denying the State's motion to dismiss, observing, "The Appellants contend that a statement by the trial court during the sentencing hearing 'preserved their right to appeal' or, if the statement was incorrect, rendered their guilty pleas unknowing and involuntary." This court then concluded in its order that "the issues in this appeal should be fully briefed to ensure adequate review."

## ANALYSIS

The Defendants argue that that the trial court erred in denying their motions to suppress, specifically contending that the search warrant affidavit failed to establish probable cause and that the search warrant was not properly executed. The State counters that the Defendants' appeal should be dismissed because they failed to perfect an appeal and that, alternatively, the trial court properly denied the Defendants' motions to suppress. In response to the State's request for dismissal, the Defendants appear to argue that they retained their right to appeal, notwithstanding the waiver of the right to appeal in their plea agreement, because the trial court made the following "inconsistent" statement at the

conclusion of their sentencing hearing: "Unless an appeal is perfected, the defendants will report to the Carroll County Jail on August 27[], 2019 at 9:00 a.m. to begin the service of these sentences." The Defendants also claim that if they did not retain their right to appeal, then their pleas are unknowing and involuntary. After reviewing the record, we conclude that because the Defendants' appeal is not properly before the court, it should be dismissed.

Before we can consider the merits of this appeal, we must first determine whether we have jurisdiction. Generally, defendants who plead guilty do not have a right to appeal in Tennessee. See Tenn. R. App. P. 3(b); Tenn. R. Crim. P. 37(b)(2); see also State v. Rowland, 520 S.W.3d 542, 545 (Tenn. 2017) ("A defendant in a criminal case has no appeal as of right unless it is enumerated in Rule 3(b)."). However, Rule 3(b) of the Tennessee Rules of Appellate Procedure provides the limited circumstances in which a criminal defendant may appeal as of right from a guilty plea:

> In criminal actions an appeal as of right by a defendant lies from any judgment of conviction entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) on a plea of not guilty; and (2) on a plea of guilty or nolo contendere, if the defendant entered into a plea agreement but explicitly reserved the right to appeal a certified question of law dispositive of the case pursuant to and in compliance with the requirements of Rule 37(b)(2)(A) or (D) of the Tennessee Rules of Criminal Procedure, or if the defendant seeks review of the sentence and there was no plea agreement concerning the sentence, or if the issues presented for review were not waived as a matter of law by the plea of guilty or nolo contendere and if such issues are apparent from the record of the proceedings already had. The defendant may also appeal as of right from an order denying or revoking probation, an order or judgment entered pursuant to Rule 36 or Rule 36.1, Tennessee Rules of Criminal Procedure, from a final judgment in a criminal contempt, habeas corpus, extradition, or post-conviction proceeding, from a final order on a request for expunction, and from the denial of a motion to withdraw a guilty plea under Tennessee Rules of Criminal Procedure 32(f).

Tenn. R. App. P. 3(b) (emphasis added).

Likewise, Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure provides that a criminal defendant may appeal a guilty plea if:

> (A) the defendant entered into a plea agreement under Rule 11(c) but explicitly reserved—with the consent of the state and of the court—the right

- 8 -

to appeal a certified question of law that is dispositive of the case, and the following requirements are met:

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review;
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved;
> (iii) the judgment or order reserving the certified question reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
> (iv) the judgment or order reserving the certified question reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case; or

> (B) the defendant seeks review of the sentence and there was no plea agreement under Rule 11(c); or

> (C) the errors complained of were not waived as a matter of law by the guilty or nolo contendere plea, or otherwise waived, and if such errors are apparent from the record of the earlier proceedings; or

> (D) if there is no plea agreement pursuant to Rule 37(b)(2)(A), the defendant—with the consent of the court—explicitly reserved the right to appeal a certified question of law that is dispositive of the case, and the requirements of Rule 37(b)(2)(A)(i)-(ii) are otherwise met.

Tenn. R. Crim. P. 37(b)(2).

The Defendants do not claim that they reserved a certified question, and the record clearly shows that they never reserved the right to appeal a certified question of law dispositive of the case. See Tenn. R. App. P. 3(b); Tenn. R. Crim. P. 37(b)(2)(A), (D). Accordingly, the Defendants do not have a right to appeal pursuant to Rule 37(b)(2)(A) or (D) or the accompanying section in Rule 3(b).

In addition, the Defendants do not have a right to appeal under Rule 37(b)(2)(B) or the corresponding provision in Rule 3(b). While most aspects of the Defendants' sentences were determined by their respective plea agreements, neither Defendant had a plea agreement regarding the manner of service of the sentences, which was the only issue the

trial court determined at the Defendants' sentencing hearing. Had the Defendants sought review of the trial court's determination regarding the manner of service of their sentences, they would have had a right to appeal. However, the Defendants instead chose to appeal the trial court's denial of their suppression motions. By entering their pleas, the Defendants admitted all facts necessary to convict and waived all non-jurisdictional defects and constitutional irregularities in the proceedings, including any issues regarding the search warrant affidavit or the execution of the search warrant. See Rowland, 520 S.W.3d at 546 ("By pleading guilty, [the defendant] waived all non-jurisdictional defects in the proceedings, including any issue with the illegality of the search of their house and the seizure of his property."); State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) ("The principle is well-settled in Tennessee jurisprudence that the voluntary entry of an informed and counseled guilty plea constitutes an admission of all facts necessary to convict and waives all non-jurisdictional defects and constitutional irregularities which may have existed prior to the entry of the guilty plea." (citations omitted)). Accordingly, the Defendants are not entitled to appeal under Rule 37(b)(2)(B) or the related provision in Rule 3(b).

Finally, the Defendants do not have a right to appeal pursuant to Rule 37(b)(2)(C) or the corresponding section of Rule 3(b). Once again, the errors complained of, namely the trial court's denial of the suppression motions, were waived as a matter of law by the Defendant's guilty pleas. See Rowland, 520 S.W.3d at 546; Pettus, 986 S.W.2d at 542. Rule 37(b)(2)(C) applies "in cases where guilt was not contested but the record clearly reflects an invalidating error, such as the clear denial of the right to counsel or a conviction under an invalid statute, wherein it would be judicially inefficient to require a post-conviction collateral attack when the error is apparent upon the face of the existing record." See Tenn. R. Crim. P. 37, Adv. Comm'n Cmts. Because the record reflects no such invalidating errors, the Defendants are not entitled to appeal pursuant to Rule 37(b)(2)(C) or the related section in Rule 3(b).

The Defendants failed to perfect an appeal under Tennessee Appellate Procedure Rule 3(b) and Tennessee Criminal Procedure Rule 37(b)(2). The Defendants never reserved the right to appeal a certified question of law that was dispositive of the case. In addition, the Defendants waived any issues concerning the denial of their suppression motions when they entered their guilty pleas. Lastly, the Defendants never sought review of the trial court's determination regarding the manner of service of their sentences, which was extremely well supported by the record and the trial court's detailed findings. Although the Defendants argue that they retained their right to appeal based on a comment the trial court made at the conclusion of the sentencing hearing, the record shows that the trial court's comment merely referenced the Defendants' right to pursue an appeal regarding the manner of service of their sentences, which was the only issue determined by the trial court at the sentencing hearing. The record further shows that the Defendants

knowingly, voluntarily, and intelligently entered their <u>Alford</u> pleas. While this court does have the inherent authority to treat an improper Rule 3(b) appeal as a petition for a common law writ of certiorari, we decline to do so in this case because we do not believe the interests of justice so require. <u>Cf.</u> <u>State v. Leath</u>, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998). Because the Defendants are not entitled to an appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3(b) and Tennessee Criminal Procedure Rule 37(b)(2), we dismiss this appeal.

## CONCLUSION

Because no appeal of right lies for the Defendants pursuant to Tennessee Rule of Appellate Procedure 3(b) and Tennessee Criminal Procedure Rule 37(b)(2), this appeal is dismissed.

_____
CAMILLE R. MCMULLEN, JUDGE